CASE 97—ORDINARY—MAY 1.

# Strubbee v. The Trustees Cincinnati Railway.

APPEAL FROM PULASKI CIRCUIT COURT.

1. The owner of timber trees cut from his land by a trespasser cannot be divested of his title thereto, although the trespasser has converted them into railroad ties and sold them to a *bona fide* purchaser.

2. The rule is well established, with scarcely an exception, that where the identity of the article· can be traced, the right of property continues to exist in the original owner.

3. The suit being for the recovery of the identical property, if the verdict be for appellant, it should be in the alternative—the property or its value—and damages for its detention.·

MORROW & NEWELL FOR APPELLANT.

The court erred in refusing the instruction asked for by appellant. The trespass committed by cutting down his trees could not deprive him of his property, whatever may have been done with it by the trespasser. The good faith of the railroad company cannot protect them as purchasers.

HILL & ALCORN FOR APPELLEE.

1. Although the timber was taken from appellant without his consent, yet it is shown that its value was greatly enhanced by the labor of the trespasser. In his hands we concede that a recovery could be had; but as between the appellant and the appellee, who are *bona fide* purchasers, the rule is different. (49 Miss., 236; 17 Am. Law Reg., 578.)

2. The suit is to recover the identical property. The court's instruction as to damages is error.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

This was an action instituted in the Pulaski circuit court for the specific recovery of 2,600 railroad cross-ties. Strubbee, the appellant, owned the land from which the timber was cut and out of which the cross-ties were made. The ties were hauled and stacked on the line of the Cincinnati Railway, and sold by E. T. Wells & Co. to the trustees of that road.

It is an admitted fact that the timber was cut and delivered to Wells & Co. by parties who were trespassers on appellant's land, having entered and taken his timber without any license from the owner, and in the absence of any claim whatever. It also appears that Wells & Co., who are the vendors of the ties to the Southern Railway, were purchasers in good faith from the original trespassers, without notice of the trespass, or the existence of any claim on the part of the appellant. The testimony shows that the timber taken was worth in the tree from five to fifteen cents per stick, and when converted into cross-ties, each tie was worth 34½ cents.

The court below refused to instruct the jury that the plaintiff (appellant) was entitled to recover the cross-ties or their value, but instructed the jury to find for the appellant the value of his timber in the tree when taken by the trespassers. Of this instruction the appellant complains, and

the appellee (the Cincinnati Southern Railway) prays a cross-appeal, and insists that the court erred in instructing the jury to find the value of the timber at the time it was taken, as the action was alone for the recovery of the specific property. The question arising in this case is, can the original owner recover his property taken by a trespasser, and by his labor greatly enhanced in value, when the property claimed has been sold by the wrong-doer to an innocent purchaser for its full value in its improved condition? It is well settled that a trespasser acquires no title to property that he has taken and converted to his own use; but it is insisted that where the rights of an innocent purchaser intervene, this doctrine has no application, and that in such cases the *bona fide* purchaser acquires title, although the party from whom he purchased had none. It is also maintained that the right of the innocent purchaser to hold the property acquired from the trespasser is limited to cases where its value, by reason of the labor and skill bestowed upon it by the wrong-doer, has greatly enhanced its value. If the value of the property has been greatly increased in the hands of the wrong-doer, he can pass title to the innocent purchaser from him, so as to defeat the claim of the real owner; but if the value has not been greatly enhanced, the owner may recover.

That the original owner has title to his timber, but the innocent purchaser has the title or right to the results of the wrong-doer's labor upon it.

This doctrine is announced in the case of the Lake Shore and Michigan Southern Railroad Company v. Hutchins, reported in the 32d Ohio State Reports, and seems to have controlled the decision of this case in the court below. That case has gone further in denying the right of recovery

to the owner of his property or its value than any case to,
which our attention has been called.

The facts appearing in the case cited conduced to show
that a large quantity of wood and railroad ties was cut upon
the land of the plaintiff by trespassers and hauled to the rail-
road, where it was sold to the company without any notice
of the rights of the owners, and the purchase made in the
best of faith.   The wood in the tree was worth one dollar
per cord, and when delivered on the road was sold for three
dollars per cord.   The company was sued for the value of
the wood and ties in its possession, and the court held that
the measure of damages was the value of the timber as it
stood on the plaintiff's land.   It is conceded that the tres-
passer could gain nothing by his own wrong, and that the
results of his labor passed to the owner of the property, but
the innocent purchaser is protected on the idea that he has.
done no wrong.   If the wanton trespasser acquires no title,
he can pass none to a purchaser from him, and there is no
rule of law that will preclude the owner from recovering the.
property itself or its value.   Every purchaser of property
must know, at·his peril, of whom he is purchasing; and if
his vendee has acquired the property as a trespasser, a pur-
chase from him, although in good faith, cannot be relied on
as a defense to the claim of the real owner.   No demand is
even required to be made of the innocent purchaser in such
a case, because, having obtained the property from a wrong-
doer, his possession is tortious.   This action is for the identi-
cal property sold the appellee (the railroad company) by the
trespasser, without any change having been made in its con-
dition, except such as had been caused by the labor of the
wrong-doer; and the rule is well established, with scarcely an
exception, that where the identity of the original article can

be traced, the right of property in the original owner continues to exist.

This rule is qualified by Justice Cooley, in his work on the Law of Torts, by adding, "unless the value of that which has been expended upon it is sufficiently great, as compared with the original value, to render the injustice of permitting its appropriation by the original owner so gross and palpable as to be apparent at first blush." (Cooley on Torts, page 56.) The objection to this qualification consists in the difficulty of applying a rule where the difference in the value of the property from its unimproved to its improved condition is to determine the right of recovery.

When the identity of the original article is lost, we can well see how the title is gone from the original owner, as, where grapes have been converted into wine, or timber into a house, or corn into whisky, or where railroad ties have become a part of the road. In all such cases it will be adjudged, as a matter of law, that the identity of the article is destroyed, and the rights of the innocent purchaser will be protected. There has been such a mechanical transformation of the article as to destroy its identity, and the mere fact that the timber can be traced into a building, or the corn to the distillery in which the whisky was made or out of which it was made, is not such an identification of the property as would authorize its recovery.

It is true that the question of intention has much to do in determining the quantum of damages in action for torts.

The willful trespasser should be subjected to a severer punishment than one who commits a trespass under the belief that he is the owner of the property, or has the right to take it into possession. That question, however, is not involved in this case. The action is to recover the property itself. It

is easily identified, and the only defense made is, that it has. been improved so as to increase its value by the trespasser, and that the appellee is a purchaser from him in good faith. The action is not for the real injury done, but is for the recovery of property to which the owner has exhibited an undoubted title; and while the law makes the distinction between a willful and an involuntary wrong-doer, as to the measure of damages, in an action to recover the property by the rightful owner, the one is as much responsible, if he has the possession and claims the title against the true owner, as the other. The innocent purchaser in this case has not converted the chattel into a different species nor made any change in the timber since the purchase, but holds the property in the same condition it was when purchased from the trespasser. If the timber had been worked into the depot buildings of the company, or made part of the road-bed by laying it down as ties, this annexation to the principal improvement would have divested the owner of title.

The case of Wetherbee against Green and others, reported in 22 Michigan, was an action of replevin by Green, &c., to recover a quantity of hoops made out of timber from Green's land. The defendant relied on a license to enter and cut the timber from one Sumner, who at one time owned the land jointly with Green. It turned out that Sumner, prior to the date of the license, had sold his interest to Camp and Brooks, and the latter uniting in the action with Green, claimed the value of the hoops. That the defendant entered under a mistake of fact clearly appeared, and it also appeared that the timber in the tree was worth only twenty-five dollars, and the hoops made out of this timber were worth seven hundred dollars. The court held that the owner could not

recover the value of the hoops, but was entitled to recover the damages sustained by reason of the unintentional trespass. The recovery in that case was denied for the reason that the appropriation of the timber was made under a mistake of fact, and the labor expended upon it causing a substantial change of identity, and the original value being insignificant compared with the value of the timber as changed, the title should be held to have passed from the real owner. When an accidental appropriation or a conversion is made under a mistake of fact, it is conceded that, under certain circumstances, the purchaser must look alone to his action for damages. The general doctrine is, that the accession of mere value by the application of skill and labor alone is insufficient to divest the owner of title. Exceptions are to be found to this rule, and the case cited comes within the exceptions. There the timber in the tree was worth only twenty-five dollars, and the *bona fide* laborer, although a wrong-doer, had increased its value to seven hundred dollars. In such a case the accession of value to the raw material is such as to impress one at first blush with the injustice of permitting the *bona fide* producer of the increased value to be deprived of it. (Cooley on the Law of Torts, page 56.) In applying the doctrine of accession to the acts of innocent parties, these exceptional cases seldom arise, and where the natural and distinctive qualities of the article remain the same, it is difficult to see in what manner it has lost its identity. In Wetherbee v. Green, Cooley, Judge, delivering the opinion, says: "Having given the timber in its present condition nearly its entire value, all the grounds of equity exist which influence the courts in recognizing a change of title under any circumstances."

The same learned jurist, in the case of the Isle Royal Mining Company v. Hertin, reported in 37 Michigan, held that where one, by a mistake as to the boundary of his land, entered upon the land adjoining, cut the timber, and made it into cord-wood, and afterwards hauled and piled it on the banks of Portage Lake, the owner was entitled to seize and hold it against any claim by the *unintentional* trespasser. The wood on the bank of the lake was worth $2.87½ per cord, and the value of the labor expended by the plaintiff in cutting it and placing it on the bank was $1.87½.

The doctrine of title by accession was insisted on in that case, but it was held that the identity of the timber was not destroyed, nor its value so increased as to make the value of the timber in the tree insignificant when compared with it. The fact that the property has been increased in value is not sufficient to divest the owner of title, nor will the party performing the labor, although mistaken as to his rights, be entitled to compensation to the extent of the benefit received by the owner. One has no right to enter upon the property of another and there make improvements, however mistaken he may be as to his right, and require the owner to compensate him for his blunder. He must know the extent of his own possession, and if, in ignorance of his rights, benefits another, no recovery can be had, however innocently the mistake may have been made.

If the wanton trespasser is permitted to dispose of the property in a case like this to an innocent purchaser for three times the value of the timber in the tree, it is ample remuneration to the wrong-doer for his labor, and the real owner is deprived of his property without his knowldge or consent. The prospective value of the timber to the owner is denied him. His wishes are not consulted as to the char-

acter and kind of timber to be taken from his woodland. He may desire it to remain in its primitive state, or as an ornament to his home, still he is told that the timber, as improved by the trespasser, enables the latter by a sale to an innocent purchaser to pass the title.   Such trespasses are committed ordinarily by irresponsible parties, and when so well remunerated a second trespass will be committed with a view to similar results.   It is not pretended that any labor was bestowed by the appellee (the purchaser) on this timber, or any money expended in changing its character or condition; and if such had been the case, it could not, upon the facts before us as to the change made in the property, have affected the owner's right of recovery.

In this case, if the company had been the original trespasser, under a mistake as to its right to the timber, the appellant (the owner) would have been entitled to recover, and when the original taking was a willful trespass, the *bona fide* purchaser acquired no greater right than the party under whom he claims could have asserted.   The case of Heard against James (49 Mississippi), relied on by the appellee, gave to the original owner the value of the timber in its improved condition.   There the trees were severed and the timber converted into staves by a trespasser, and the latter was held responsible for their value.   That case intimates that, where the value of the thing has been enhanced by the labor and skill employed to adapt the material to a more useful purpose, under a mistake as to right of ownership, the real owner will be confined to the value of the original article; but it is nowhere adjudged, except in the case reported in 32 Ohio, that the innocent purchaser can acquire title to the thing itself, or its increased value, because of the labor performed by the wrong-doer under whom he claims.

While in an action of trover the value at the time of the conversion is ordinarily the criterion of damages, when the conversion has been innocently made, yet, when the owner brings his action to recover his property (the thing itself), it is no answer to the action to say that when the property was taken the defendant, in good faith, believed it was his, and, as he has improved its condition so as to double or treble its value, the right of recovery is gone.   If the doctrine contended for by the appellee in this case is sanctioned, as said by Justice Cooley in the case of the Royal Mining Company v. Hertin (37 Michigan), "what bounds can be prescribed to which the application of this doctrine can be limited?" Neither the wanton trespasser nor the party who commits an unintentional trespass can divest the owner of title under any such circumstances.  The fundamental principle "that no man can be deprived of his property without his consent, unless by operation of law," can afford but little protection if the owner is compelled to pay for the labor upon his property taken and performed without his knowledge or consent, or else the right to the possession of his property denied him, and the title vested in another.  The doctrine of accession is not properly applicable to a case like this, as this generally means "accession of other materials as well as skill and labor;" and when the value is increased by skill and labor alone, it must be an extreme case that will authorize an exception from the general rule, under which the owner may recover his property so long as he can identify it. (Lampton's ex'r v. Preston, 1st J. J. Marshall, 459, and Burns v. Johnson, 196.)

This judgment must be reversed on both the original and cross-appeal, and the cause remanded, with directions to award a new trial, and for further proceedings consistent with this opinion.