TotteN, J.,
delivered tbe opinion of tbe court.
Oneal sued Dunn in an action of debt upon an account. There was judgment for Oneal, tbe plaintiff, below, and the defendant appealed in ei’ror. In Oneal’s account there is a chai’ge for two fine saddles, and that is tbe only matter now in contest between tbe parties.
Tbe material facts are these: Tbe plaintiff, Oneal, who bad established a saddler’s shop in Benton, hired one McCoy, a saddler, tó work in said shop. The plaintiff was to furnish all materials and pay McCoy four dollars for each saddle made by him; and all work done in the shop by McCoy was to be for and *108 on account of tbe plaintiff. While McCoy was in this service, and some three months after it commenced, he agreed with defendant Dunn to make two fine saddles for him, Dunn to furnish all the materials except the trees, of small value, and to pay a reasonable price for the making.
The materials, except the trees, and some other articles of small value, were furnished by defendant to McCoy, who took them to the plaintiff’s shop, and proceeded to manufacture the saddles, using the trees and some small articles, the plaintiff’s property, to supply a deficiency in defendant’s materials. The plaintiff being often at the shop, was informed that the materials were furnished by defendant, and that the saddles were made specially for him; and when made they were delivered .with his knowledge and consent.
It does not appear that he knew of said agreement between defendant and McCoy, or that he made any enquiry into the matter; nor does it appear that defendant knew the nature of t the contract between Mc-Ooy and the plaintiff. He knew that McCoy was engaged at work in the plaintiff’s shop. McCoy had done work in the shop for others and received payment for himself. This was known to the plaintiff; and there is reason to believe that in the present case, his intention was from the beginning, to let the saddles be made and delivered, and then to charge the defendant with their full value, crediting him with the value of his materials. But this intention he concealed from defendant, who paid McCoy for making the saddles, and plaintiff, afterwards in a settlement, also paid him by a credit on his account.
*109 Tlie plaintiff credited tbe defendant by a part of bis materials; but for tbe casbmere and other materials, no credit was given.
His Honor, tbe judge, upon tbis state of facts, instructed tbe jury, in effect, that tbe saddles were tbe property of the plaintiff; that be was entitled to recover their full value, and that it was at bis discretion to credit tbe defendant with tbe value of bis materials or not.
In these instructions we think there is error. It is true, as argued, that while McCoy continued in plaintiff’s service, under their agreement, be could do no work at plaintiff’s shop on bis own account. His time and labor there belonged ^ to tbe plaintiff; and, under tbe circumstances, we are to bold tbe defendant bound to a knowledge of tbis fact. If be did not know it, it was bis duty to enquire, and be cannot be permitted to avail himself of an ignorance which was tbe result of his own negligence. Tbe plaintiff, too, knew that tbe defendant had procured tbe fine materials and sent them to tbe shop to be manufactured into saddles for tbe defendant. And now, the saddles being made, tbe question is, in whom was tbe right before they were delivered? We answer, in tbe defendant, because be bad furnished tbe principal materials to be wrought into saddles for himself.
Tbe plaintiff could not .acquire a property in these materials, except by defendant’s consent, or by right of accession.
As to consent, none is pretended. As to accession, tbe right cannot exist in bis favor; for be did not furnish tbe principal materials;- those which be fur *110 nished were only necessary to supply a deficiency in defendant’s materials, which were of greater value.
It is a rule of both the civil and common law, that if the materials of A and B are united by the labor of B, who furnished the pvinevpal materials, the property in the joint product, is in the latter by right of accession, the materials of the former being considered as only accessory. It is an element in the right, that he furnished the principal materials, which, in the present case, he did not do. Merritt vs. Johnson, 7 Johns. R., 473. 2 Kent, 361.
This principle may be illustrated by cases in the civil law; as if one repair his vessel with the materials of another, the property of the vessel remains in him; but if he build a vessel from the foundation with another’s materials, the owner of the materials is the owner of the vessel. Nor can the plaintiff claim title to the defendant’s materials upon the ground that he had converted them to his own use and become liable for their value. He can acquire no title by a wrongful act, unless the defendant thinks tfroper to abandon his property and accept a satisfaction in value. For the rule is, that “whatever alteration of form any property has undergone, the owner may seize it in its new shape, if he can prove the identity of the original materials.” Betts vs. Lee, 5 Johns. R., 348.
In any view, it is clear that the plaintiff has no property in the materials furnished by defendant. The property remains in the defendant, though the materials be manufactured into the saddles. How, then, can it be said, that the plaintiff is owner of the product: is owner of the saddles, when it is clear that the defen- *111 clant is owner of the materials of wbicb tliey consist. No such confusion of title can exist.
The result is simply this: The property in the saddles, when completed, was vested in the defendant, subject to the plaintiff’s right of compensation for the , making, and for such materials as he furnished; for •which he had a lein, and might have retained possession until payment was made or tendered.
The judgment will be reversed, and the cause be remanded for a new trial.