Baker v. Meisch.

A. L. BAKER v. PETER MEISCH ET AL.

[FILED MARCH 26, 1890.]

1. **Lease:** LIS PENDENS: TRESPASS NOT PROVED. One P., claiming to be the owner of certain real estate, leased a portion of the same to M. & M. for the manufacture of brick. M. & M. thereupon commenced to manufacture brick thereon, and afterwards were notified by one P. that he claimed the land as his and notified them to stop work, which they did not do. It appeared that P. had an action then pending for the specific performance of an alleged contract for the land, and the brick in dispute were all made while that action was pending. There is no proof that M. & M. acted in bad faith. The nature of P.'s claim does not appear, but judgment was on the final hearing rendered against him. · *Held*, That the proof failed to show that M. & M. willfully trespassed on the land in question, and manufactured brick therefrom.

2. **Injunction:** VIOLATION: UNDERTAKING. Where it is sought to prove that certain acts of a party enjoined were in violation of an injunction, it must appear that an undertaking was given as required by law.

3. **Accession:** TRESPASS: TRANSFORMATION OF PROPERTY. The doctrine of accession of property applies where one has willfully, as a trespasser, taken the property of another, and altered it in

substance or form by his own labor. Where, however, the appro-
priation was through a mistake of fact, and labor has been ex-
pended upon it which converts it into something very different
from the original article and greatly increases its value, and the
value of the original article is insignificant in comparison with
the new product, the title to the property in its converted form
will pass to the person who has thus expended his labor, the orig-
inal owner to recover the value of the original article.

ERROR to the district court for Dakota county. Tried
below before NORRIS, J.

*Bailie & Sisson*, and *Fair & Evans*, for plaintiff in error:

Defendants admit in the stipulation that they willfully
entered upon plaintiff's premises; hence they could ac-
quire no rights to the bricks manufactured thereon. (2
Kent, Com., 363; *Betts v. Lee*, 5 Johns. [N. Y.], 348 [4
Am. Dec., 368]; *Curtis v. Groat*, 6 Johns. [N. Y.], 168;
*Silsbury v. McCoon*, 3 N. Y., 379; Wells on Replevin, secs.
79, 80, 81, 89, 567; *Nesbitt v. St. Paul Lumber Co.*, 21
Minn., 491; *Ill. & St. L. R. Co. v. Ogle*, 92 Ill., 353; *Sny-
der v. Vaux*, 2 Rawle [Pa.], 453; *Freeman v. Underwood*,
66 Me., 229; *Stuart v. Phelps*, 39 Ia., 14; 2 Schouler on
Per. Prop., 37; *Hyde v. Cookson*, 21 Barb. [N. Y.], 104;
*Breckenridge v. Holland*, 2 Blackford [Ind.], 377; *Brown
v. Sax*, 7 Cow. [N. Y.], 97; *Spicer v. Waters*, 65 Barb.
[N. Y.], *Elliott v. Powell*, 10 Watts [Pa.], 234, 453; *Wey-
mouth v. Chicago & N. W. R. Co.* 17 Wis., 567; *Jeffries v.
Great Western R. Co.*, 34 E. L. & Eq., 122; *Davis v. Easley*,
13 Ill., 198; Cooley on Torts, 55, 56; *Miller v. Clark*, 23
N. W. Rep., 35; *Isle Royal Mining Co. v. Hertin*, 37 Mich.,
332; *McLean v. Bovee*, 24 Wis., 295; *Parker v. Storts*, 15
O. St., 352; *Kimball v. Lohmas*, 31 Cal., 158.) Defendants
had actual and, through the pendency of the suit, con-
structive notice of plaintiff's rights, and are bound thereby.
3 Pomeroy, Eq. Jur., secs. 591, 595; Wade, Notice, secs.
67, 338, 341, 344, 347; *Crocker v. Crocker*, 31 N. Y., 507;
*Wooster v. Sherwood*, 25 Id., 278; *McAnelly v. Chapman*,

Baker v. Meisch.

18 Tex., 198; *Saltus v. Everett,* 20 Wend. [N. Y.], 267.)
Property may be reclaimed in an altered state, and from
third parties innocent purchasers.    (Wade, Notice, secs. 74,
75, 76.)

*Jay Bros., contra:*

It is an unjust rule which makes defendants lose all the
labor by which comparatively worthless clay was trans-
formed into a valuable commodity.    Such a doctrine is not
sustained by the better authorities, even in the case of will-
ful trespassers. (*Single v. Schneider,* 30 Wis., 570; *Win-
chester v. Craig,* 33 Mich., 206; *Northrup v. McGill,* 27
Id., 238; *Warren v. Cole,* 15 Id., 271; *Ill. & St. L. R.
and Coal Co. v. Ogle,* 82 Ill., 627; *McLain Coal Co. v.
Long,* 31 Id., 359; *Robertson v. Jones,* 71 Id., 405; *Whit-
field v. Whitfield,* 40 Miss., 366; *Tuck v. Moses,* 58 Me.,
461; *Brown v. Sax,* 7 Cowen [N. Y.], 95; *Single v. Schnei-
der,* 30 Wis., 570; *Weymouth v. Chicago & N. W. R. Co.,*
17 Wis., 567; *Herdic v. Young,* 55 Pa. St., 176; *Railway
Co. v. Hutchins,* 32 O. St., 571.)    Recovery is limited to the
value of the clay at the time of its removal from the realty.
(*Forsyth v. Wells,* 41 Pa. St., 291; *Herdic v. Young,* 55
Id., 176; *Goller v. Fett,* 30 Cal., 482; *Coleman's Appeal,*
62 Pa. St., 278; *Foote v. Merrill,* 20 Am. R., 151 [50 N.
H., 490].)

Maxwell, J.

This is an action of replevin brought by the plaintiff
against the defendant to recover the possession of 150,000
brick of the value of $6.50 per M upon the ground that
they had been manufactured from clay belonging to the
plaintiff and that the defendant Meisch willfully and
wrongfully appropriated said clay.    The case was tried
upon a stipulation of facts as follows :

 " 1st. That the plaintiff, A. L. Baker, is the absolute

owner in fee simple of the north ten acres of lot 3, section
21, township 29, range 9 east, in Dakota county, Nebraska,
from and on which the brick in question were manufact-
ured and burned by the defendant, Peter Meisch, Rosa
Meisch, and John Marshall, and that the said A. L. Baker
has been the owner of said premises since the 25th of
June, 1887.

"2d. That the brick in question, as replevied by the
plaintiff from the defendants, aggregated 150,000, and were
at that time, and are now, of the value of $6.50 per M
brick, and were manufactured by the defendants during the
months of June and July, 1888, upon and from the clay
and materials of the premises aforesaid then belonging to
the plaintiff.

"3d. That said defendants Meisch and Marshall had
entered upon said premises by virtue of a pretended lease
from one E. C. Palmer, who never owned or had a right
to lease the same; but who claimed to the defendants that
he was the owner of the same, and claimed right to the
same under the terms of a contract he claimed to have en-
tered into between himself and one J. M. Moan, who was
his partner in the real estate business at South Sioux City,
Neb., near the land above described, and who claimed to
be the agent of one Edward Croak, a former owner of said
premises, and that the said E. C. Palmer had brought an
action in the district court of said county against said
Croak to compel the specific performance of said alleged
contract; which action was begun in May, 1887, and was
finally adjudicated and decided in favor of the defendant,
the said Edward Croak, and against the plaintiff, E. C.
Palmer, on the 18th day of Sept., 1888, the costs having
been paid by the said Palmer and the time for appeal
passed, but that the said suit was pending at the time that
the brick in question were made by the defendants.

"4th. That at the time the said defendants Meisch and
Marshall entered upon said premises, they were notified by

the owner thereof that the land described did not belong
to Palmer, the lessor to them; that the defendants pro-
ceeded to manufacture brick thereon, and that on the 29th
day of November, 1887, the plaintiff, who was then the
owner in fee of said premises, brought an action in the
district court of said county against the defendants Meisch
and Marshall to enjoin them from further trespassing upon
said premises and from manufacturing brick thereon or
therefrom, and that on the 29th day of December, 1887,
the judge of said court, after hearing the evidence on part
of the plaintiff and defendants, made an order enjoining
said defendants from further trespassing upon said prem-
ises for the purpose of manufacturing brick thereon, which
order was duly served upon the defendants.

"5th. That said defendants not regarding said order of
injunction, but while it was still pending, willfully pro-
ceeded to manufacture the brick in question as aforesaid;
that on the 21st day of September, 1888, the defendants
made a bill of sale of the brick in question to the defend-
ant, John Arensdorf, which bill of sale plaintiff and de-
fendants are permitted to introduce evidence upon and
inquire into the same as though it had not been referred
to in this stipulation, the question of the *bona fides* of the
purchase made by the said Arensdorf, and the question of
notice to the plaintiff's rights at the time of purchase be-
ing alleged by the defendants and contradicted by the
plaintiff herein.

"6th. That this action was begun after the date of the
alleged bill of sale, and that the proceedings on the part of
the plaintiff in regard to the petition, affidavit, bond, de-
mand on the defendants, and service by summons, and
every other needful step has been regular and according to
law on the part of the plaintiff and the defendants to this
action."

In the petition for an injunction against the defendants
we find the following allegations:

"Comes now the plaintiff and as cause for relief states to the court: 1st. That prior to the 23d day of May, 1887, Edward Croak was the owner in fee of the following described premises, to-wit, the N. 10 acres of lot 3, section 21, township 29, range 9 east, in Dakota county, Nebraska, said land being a strip of uniform width along the north side of said lot.

"2d. That on the 23d day of May, 1887, Edward Croak conveyed to F. L. Gilbert all his right, title, and interest in and to the above described premises by warranty deed, which will more fully and at large appear by reference to the records of Dakota county in deed book R, page 37, the said F. L. Gilbert entering into immediate possession of said land and remaining in possession of the same until the 25th day of June, 1887; that on or about the 30th day of May, 1887, the said F. L. Gilbert appointed Eugene R. Sissons as his attorney in fact for the care and management of said land, which power of attorney is a matter of record, as will at large appear by reference to the records of said county in miscellaneous record A, page 383, and that the said Eugene R. Sissons took possession of said land and remained in continuous possession until said Gilbert disposed of the same.

"4th. That on or about the 25th day of June, 1887, F. L. Gilbert, by good and sufficient warranty deed, conveyed to A. L. Baker the lands above described, which deed is recorded in the record of Dakota county, in deed book R, pages 217 and 218, the said A. L. Baker entering into immediate possession, and by his regular appointed agent Eugene R. Sissons has continued in possession up to the present time.

"5th. That on or about the 27th day of June, 1887, an action was begun in the district court of Dakota county to adjust the alleged disputed title to the lands above described, which action is still pending in said court.

"6th. That after the commencement of the aforesaid ac-

tion, and while the said F. L. Gilbert was in possession of said land, Peter Meisch and John or Jean Marshall, without any color of title or show of right, entered upon said lands and erected the fixtures necessary for the manufacture of brick and have dug deep holes and pits in said land, rendering it useless for tilling, residences, and manufacturing, or city purposes, and are otherwise injuring said property, and will continue so to do to the damage of this plaintiff if not enjoined by the court.

"7th. That the acts of the defendants in trespassing upon and entering into possession of said land, and digging up the soil thereof, was without the consent of this plaintiff.

"8th. That the said F. L. Gilbert, by his attorney in fact, notified the defendants Meisch and Marshall of said Baker's title to said premises, while he was the owner of said premises.

"9th. That on or about the 12th day of July, 1887, the plaintiff, A. L. Baker, caused a notice to be served on the defendant, Peter Meisch, notifying him of the said A. L. Baker's right to the said land, and directing him to refrain from further trespassing upon said premises."

A restraining order seems to have been granted against the defendants, which was afterwards modified, but we find no undertaking set out in the record as having been given by the plaintiff to the defendants, nor any evidence that one was given.

Section 255 of the Code provides that "No injunction, unless provided by special statute, shall operate until the party obtaining the same shall give an undertaking, executed by one or more sufficient sureties, to be approved by the clerk of the court granting such injunction, in an amount to be fixed by the court or judge allowing the same, to secure to the party enjoined the damages he may sustain, if it be finally decided that the injunction ought not to have been granted."

Unless such an undertaking was given, a party enjoined,

except in the special cases provided by statute, of which this is not one, would not be liable for contempt for disregarding the injunction. This, therefore, disposes of the alleged willful violation of the injunction. Where an injunction is disregarded, if an undertaking has been given and approved as required by law, the aggrieved party may, upon filing the proper information under oath with the judge who granted the injunction, have a warrant issued and the party who has violated the injunction arrested and punished for contempt; and he may have this relief promptly upon disobedience of the injunction. If this were not so, the rights of the party complaining would be liable to injury or destruction. The party obtaining the order, however, must himself be free from fault. In the case at bar there is a finding of the court that the defendants have violated the injunction and a fine of $50 imposed. This judgment was rendered at the same term apparently and but one day preceding the trial of the case of *Palmer v. Croak*, and no information upon which the attachment proceedings were predicated, if any such there were, is set out in the record. Had the plaintiff been entirely certain that he was in the right, it is but reasonable to suppose that he would have acted much more promptly.

From the stipulation of facts it appears that Palmer claimed to have purchased the land in controversy from Croak, and that he commenced an action to enforce specific performance of such contract. Neither the pleadings nor proof in that case are before us, so that we have no means of knowing the character of his claim. While that action was pending Palmer made the lease in question to the defendants and the brick in controversy were made before the final determination of that case.

The court will not presume that Palmer had no apparent right to the performance of his alleged contract. The presumption is that he did have such apparent right, and that having the same the defendants acted in good faith in

taking a lease from him. In other words, Palmer professed to be the owner of the land under his contract, and as such owner he made a lease of a portion of the same to the defendants.

It is conceded in the stipulation that Palmer "claimed to the defendants that he was the owner of the same, and claimed right to the same under the terms of a contract he claimed to have entered into between himself and one J. M. Moan, who was his partner in the real estate business at South Sioux City, Nebraska, near the land above described, and who claimed to be the agent of one Edward Croak, a former owner of said premises, and that the said E. C. Palmer had brought an action in the district court of said county against said Croak."

There is no claim that the defendants Meisch and Marshall did not believe the statements of Palmer. In fact, a careful reading of the record leads us to infer that they are comparatively ignorant of the nature of titles to real estate and inclined to put implicit reliance in the statements of any person who may have obtained their confidence, and it is evident that there was no willful trespass committed by them on the plaintiff's land. The claim of the plaintiff, therefore, that the defendants willfully, as trespassers, entered upon the plaintiff's land and manufactured the brick in question from the clay thereon is not sustained by the proof.

The general doctrine of accession, and the foundation upon which it rests is, Did the party have knowledge that he was violating the rights of another and deliberately disregard such rights? This rule is derived from the Civil Law Dig., lib. X, tit. 4, C. 12, § 3.

As stated by Puffendorf: "If a man out of willful and designed fraud puts a new shape on my matter that he may by this means rob me of it, he neither gains any right over the matter by this act nor can demand of me a reward for

Baker v. Meisch.

his labor any more than a thief who digs through my
walls can desire to be paid for his great trouble in making a
new door into my house." (Puff., B. 4, C. 7, § 10.)

In Wood's Institutes, the general rule is stated as fol-
lows: "He that made the new species shall be master of
the whole if it cannot be reduced to its first state and con-
dition; as when one shall press wine from your grapes, or
build a ship from your timber, you cannot claim the wine,
or the ship, etc. But this determination only takes place
in favor of the workman where the work was designed
for his own use, and where he erroneously and by mistake
thought the matter was his own. For if it was intended
for the use of any other, it is his upon the same terms for
whose use it was working, and if it is known that the
grapes and timber are another's, and yet thereof he pro-
ceeds to make his wine or ship, he shall lose his labor and
workmanship; the whole shall accrue to the owner, and an
action may be maintained against him." (Wood's Inst.
Civil Law, 92; 1 Bell's Comm., 277, and note (2).)

Where the appropriation of the property of another is
accidental, or through mistake of fact, and labor has in
good faith been expended upon it which converts it into
something entirely different and very greatly increases its
value, the original article being comparatively of but little
value, the title to the property will be held to pass to the
person by whose labor the change has been wrought, and
the original owner may recover the value of the article as
it was before its conversion.

No doubt the court in a proper case could subject the
manufactured article to this payment. No court will con-
fiscate the articles manufactured by another to the owner
of the original material unless the facts to justify such
confiscation are clearly established, particularly as in this
case where the original article was mere clay in the bank.

There is considerable proof as to notice and the good

faith of the parties purchasing the brick which we do not deem material.

The judgment is right and is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.