## Louis Werner Stave Company v. W. A. Pickering et al.

Decided May 10, 1909.

**1.—Conversion—Measure of Damage.**

When one person appropriates the property of another in good faith under a mistake of fact, and by his labor converts it into a thing entirely different from the original and of greatly increased value, the title to the property will pass to the person by whose labor the change has been wrought, and the owner can only recover the value of the property at the time it was taken. This rule applied in a case of the manufacture of staves by one person out of timber belonging to another.

**2.—Same—Bad Faith.**

A wilful trespasser, or one who appropriates the property of another in bad faith, can acquire no right in the property however much he might increase its value by his labor.

**3.—Sequestration—Wrongful Seizure—Measure of Damage.**

When property is wrongfully seized and sold by an officer under and by virtue of writ of sequestration, the owner is not bound to accept as compensation the price at which the property was sold by the sheriff, but is entitled to the fair value of the same at the time of seizure, with legal interest thereon.

Appeal from the District Court of Shelby County. Tried below before Hon. Jas. I. Perkins.

*Davis & Davis* and *Stephenson & Stephenson,* for appellant.

*J. M. Sanders* and *John C. Walker,* for appellees.—The staves in their manufactured condition belonged to the appellee, the plaintiff below; the fact of the timber being made into staves in nowise changed its ownership, therefore the appellant never had any interest upon which to base any recovery whatever. Under all circumstances appellee was entitled to the whole value of the property sequestered at all times. Brown v. Pope, 65 S. W., 42; Missouri, K. & T. Ry. Co. v. Starr, 55 S. W., 393-395, and authorities there cited.

PLEASANTS, CHIEF JUSTICE.—This suit was brought by appellee, W. A. Pickering, against John Sincoe, to recover the title and possession of a tract of 779 acres of land on the Eli Deemer survey in Shelby County, and also to recover 75,000 oak staves alleged to be in the possession of the defendant on said land and to have been made from timber grown on said land, and therefore the property of plaintiff.

On the day the suit was filed, July 5, 1907, plaintiff procured the issuance of a writ of sequestration under which 24,000 staves which had been made by the defendant from timber grown on said land were seized by the sheriff of Shelby County. On August 30, 1907, plaintiff filed an amended petition by which appellant was made a party defendant. This petition sought recovery of the land and staves against appellant and the said John Sincoe, the number of staves claimed being 50,000, of the alleged value of $3,375. It is further alleged that these staves were cut from 339 trees grown on the land in controversy, and that said trees contained 111,301 feet of merchantable timber worth $8.00 per thousand feet. The prayer of the petition is for recovery of the land and staves or the value of said staves, which is alleged to be $60 per thousand. There is an alternative prayer that, in event plaintiff should not be entitled to recover the value of the staves, that he have judgment for the value of timber contained in said 339 trees, and if he should be held not entitled to recover the value of said timber, that he have judgment for the value of said trees as standing timber, which he alleged to be the sum of $5 per tree.

The defendant, John Sincoe, in his answer filed January 7, 1908, disclaimed any title in himself to the land or to the staves, and says that he was the agent of the Louis Werner Stave Company in the purchase of the timber and having it worked into staves, and that he, acting for them as their agent, acted in good faith, believing that he had the right to enter upon the land and cut the timber.

The defendant, Louis Werner Stave Company, by its first amended answer filed February 3, 1908, claimed the staves sued for as its property. In support of its claim of title to said staves defendant pleaded in substance the following facts: That it was extensively engaged in the manufacture of staves from oak trees, and that in pursuance of its said business it purchased from Josh Truitt all of the oak trees

suitable for the manufacture of staves growing upon the Stephen English survey in Shelby County; that said English survey adjoins the Deemer survey claimed by plaintiff, the eastern boundary line of the English being the western line of the Deemer; that if any of the staves were manufactured from trees cut from the Deemer survey, which is expressly denied, said trees were so cut by mistake; that defendant used proper and reasonable care to discover the true location of the line between said surveys, and had the location of said line pointed out to it by a citizen of said county who lived near said line, and that if any trees were cut on the Deemer survey defendant was ignorant of such fact and believed in good faith that all of the trees so cut by it were on the English survey. It further alleged that by the expenditure of its labor and money in the manufacture of said staves, the value of the timber in said trees was increased more than five hundred percent over the value of the standing trees. It is also alleged that plaintiff knew that the staves were the property of said defendant at the time it procured the issuance of said writ of sequestration, and had said staves seized by the sheriff, and that said writ was illegally and wrongfully sued out and levied upon defendant's said property. The prayer of the answer is, that in event it be found that any of said trees were cut from plaintiff's land, that plaintiff recover only the value of the standing trees, and that defendant recover of plaintiff and the sureties upon his sequestration bond the difference between such value and the value of the staves which had been levied on under the writ of sequestration sued out by plaintiff and theretofore sold under order of the court and purchased at said sale by plaintiff. There is a further prayer for $2,000 damages for the wrongful suing out and levy of said writ.

The cause was submitted to a jury in the court below upon special issues, and the jury found:

First. That the number of staves manufactured by the defendant from trees cut from plaintiff's land was 24,000, and that these staves when seized by the sheriff under the writ of sequestration were worth at the time and place of such seizure the sum of $45 per thousand.

Second. That the number of trees cut by defendant from plaintiff's land was 330, and that said trees were worth $1 per tree.

Third. That the timber in said trees had no cash market value for any purpose except for the manufacture of staves.

Fourth. That the defendant did not intentionally cut and appropriate the trees of plaintiff.

Fifth. That the defendant cut said trees by mistake, believing in good faith that it was the owner thereof, and that before cutting and appropriating said trees defendant exercised the diligence and care, which a prudent person would have exercised under the same circumstances to ascertain the true ownership of the timber and the land upon which it stood.

The staves, as alleged in the pleading, were sold by the sheriff under an interlocutory order of the court directing their sale as perishable property, and were bid in by the plaintiff for the sum of $570.

Upon return of the verdict defendant moved the court to enter judgment in its favor against plaintiff and the sureties upon his se-

questration bond for the sum of $1,080, the value of the staves at the time they were seized by the sheriff, less the sum of $339, the value of the trees cut by defendant from plaintiff's land. This motion was overruled, and judgment was rendered for plaintiff for the land in controversy, and for the defendant stave company for the sum of $570, the amount for which the staves were sold by the sheriff, less the $339, the value of the trees cut as before stated, the sheriff being directed to pay to said defendant said amount out of the $570 in his hands as proceeds of said sale, after deducting therefrom the cost adjudged against said defendant.

Under appropriate assignments of error the appellant assails the judgment upon the ground that upon the facts found by the jury the staves were the property of appellant at the time they were seized under the writ of sequestration, and therefore said seizure was wrongful, and appellant is entitled to recover of plaintiff and the sureties on said sequestration bond the value of said staves at the time and place of the seizure with six percent interest thereon from the date of the wrongful taking, less the value of the trees from which said staves were manufactured.

We think these assignments should be sustained. It is a well-settled rule of decision in other jurisdictions that when the appropriation of property is made in good faith under a mistake of facts, and the taker has by labor expended upon said property converted it into a thing entirely different from the original and of greatly increased value, the title to the property will pass to the person by whose labor the change has been wrought, and the original owner can only recover the value of the article at the time it was taken. (Wetherbee v. Green, 22 Mich., 311; Baker v. Meisch, 29 Neb., 227; Carpenter v. Lingenfelter, 42 Neb., 728.) This doctrine has been recognized and applied by the courts of this State in several cases in which the owner of timber taken by mistake was denied the right to recover the value of the timber in its manufactured state. (Texas & N. O. Ry. Co. v. Jones, 34 Texas Civ. App., 94; Young v. Pine Ridge Lumber Company, 100 S. W., 784.)

The general rule is that the owner of property has the right to all that becomes united or attached to it by accession. But when such accession is produced by the labor of another and the identity of the property is thereby changed and its value greatly increased, the right to the property in its changed condition depends upon whether the person converting it acts in good faith, believing that the property was his at the time of the conversion. If taken under these circumstances the title to the property in its changed condition passes by accession to the person by whose labor its value has been so increased, and the original owner can only recover the value of the property in its condition at the time of the taking. On the other hand, a willful trespasser can acquire no right in property, it matters not how much he may increase its value, for the law will not permit one to take advantage of his own wrong.

The learned trial judge recognized the rule above announced and refused to allow plaintiff to recover, upon the findings of the jury, more than the value of the standing timber, but evidently held that

the sequestration was not wrongfully sued out, and that therefore defendant was only entitled to recover the amount for which the staves were sold by the sheriff. We can not concur in this holding.

The staves being the property of the defendant at the time of their seizure under the writ of sequestration, such seizure was wrongful, and defendant was entitled to recover their value at the time of the unlawful seizure, with legal interest thereon. (Weaver v. Ashcroft, 50 Texas, 427; Blum v. Thomas, 60 Texas, 158; Willis v. Lowry, 66 Texas, 540.)

The seizure being wrongful, the sale by the sheriff was illegal and wrongful in its relation to appellant's rights, and therefore appellant is not bound to accept the price at which said staves were sold as compensation for their wrongful seizure, it matters not how fair and regular the manner of conducting the sale may have been.

We think the judgment of the court below should be reversed and judgment here rendered in favor of appellant for the value of the staves as found by the jury, with six percent interest thereon from date of the seizure, less the value of the standing trees, and it has been so ordered.

*Reversed and rendered.*