## OCHOA v. ROGERS.   (No. 6612.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 2, 1921. Rehearing Denied Nov. 30, 1921.)

1. **Accession** ⊙⇒2—**Rule of title as to accessions to property wrongfully in possession stated.**

If plaintiff's property is found in hands of one who stole it, or in the hands of one ignorant of theft or invalidity of his title, and the value of improvements is less than the value of the property when possession was obtained, plaintiff may reclaim his property; but if the one in possession is innocent, and in good faith improves and enhances the value of the property, and such improvements approach or exceed the value of the article, title passes to the purchaser, who is liable to the owner for the market value of the article at the time he obtained possession.

2. **Accession** ⊙⇒2—**Purchaser of stolen auto, converting it into truck, liable only for market value at time of purchase.**

In action for possession of an auto stolen from plaintiff, and later purchased for $85 by defendant from the government as junk, and converted into a truck, plaintiff's recovery is limited to the market value of the car at the time of defendant's purchase, and not the en-

---

⊙⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

hanced value of the car brought about by $800 in improvements placed on same by defendant.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Action by Miguel Ochoa against Henry A. Rogers. Judgment for plaintiff in an amount less than petitioned for, and he appeals. Affirmed.

G. Woodson Morris, of San Antonio, for appellant.

Leonard Brown, of San Antonio, for appellee.

SMITH, J. On Christmas Eve, 1918, a 6-cylinder Studebaker passenger automobile was stolen from its owner, Miguel Ochoa, in San Antonio. In some unaccountable way it got into the possession of the United States government, and on November 12, 1919, the government sold it to Henry A. Rogers, at an auction sale at Camp Travis, at which a large number of dismantled cars called "junk" were likewise disposed of. At the time it was so purchased by Rogers no part of the car was intact. It had no top except a part of the frame thereof; its steering rod was without a wheel; it had no tires, no rims, no cushions, no battery; the motor was out of the car, but included in the junk, as was also the radiator; one headlight was entirely gone, the other was useless; part of the gears were out and one wheel was gone, as was one axle; the fenders were partly gone, and had to be entirely replaced; the differential was beyond repair, and the frame, or chassis, was there, but broken. It was no longer an automobile, but a pile of broken and dismantled parts of what was once Ochoa's car. It was "junk." Rogers paid the government $85 for this junk at the auction sale, which was its market value at the time. Having purchased these parts, Rogers used them in the construction of a delivery truck, at an expense of approximately $800. When the truck was completed, he put it in use in his furniture business. This was late in 1919. On August 7, 1920, Ochoa, passing Rogers' place of business recognized the machine from a mark on the hood and another on the radiator, and completed the identification by checking the serial and engine numbers, which tallied accurately with similar numbers on the car he had owned. The identification being complete and satisfactory to himself and other witnesses, Ochoa demanded the property of Rogers, who refused to surrender it, whereupon Ochoa brought this suit to recover possession of the property, or, in the alternative, for the value thereof at the time of the suit, which he alleged to be $1,000, and for the value of the use of the car at the rate of $5 per day from the time Rogers purchased it from the government.

The cause was tried before the court without a jury, and from a judgment in his favor for $85 Ochoa has appealed. No findings of fact or conclusions of law were requested of or filed by the trial court.

As appellant Ochoa contends that, as the car was stolen from him, and had not lost its identity, the title never passed out of him, and that therefore he had the right to reclaim it wherever and whenever and in whosesoever hands it was found; that, regardless of the the fact that Rogers may have been a wholly innocent purchaser, which is undisputed, appellant was entitled to immediate possession of the car in the condition it was then in. Appellant further contends that, regardless of his ignorance of the prior history and title of the car, Rogers was not entitled to any more consideration than was the thief who stole it from Ochoa, and therefore should not be reimbursed.

[1, 2] It is of course settled that, if Ochoa had found his property in the hands of the one who stole it, he would have been entitled to at once reclaim it in the condition it was then in. In such case the thief would not be entitled to consideration for any money he had expended in enhancing its value, and this would have been true as well of one who had obtained possession of the property knowing, or failing to exercise care to ascertain that the car was stolen property. Or, if the one wrongfully in possession, being ignorant of the theft or of the invalidity of his title, expends only a nominal sum in improving the condition, or enhancing the value, of the car, or if the value of the repairs and improvement is substantially less than the value of the property when he obtained such wrongful possession, he would probably not be entitled to reimbursement. And in neither event could it be said that the character of the property had been so changed by accession as to pass title to the one in wrongful possession, so as to defeat the suit of the owner for possession. But if the one in wrongful possession be an innocent or unintentional trespasser, and in good faith improves and enhances the value of the property, and such improvements and additions exceed, or even substantially approach, the value of the article in its raw state when found, the property in dispute becomes merely accessory to the resulting product, and title thereto passes to the purchaser, who is liable to the original owner only for the market value of the lost article at the time it is found. The principle is very clearly stated in 1 R. C. L. 124:

"It is therefore the general rule that, where it can be shown that the labor and materials of an innocent trespasser contributed more to the value of the present chattel than those materials which he took without intending a wrong, he is entitled to keep the chattel as his own, making, however, due compensation to the owner of the materials for what he took."

In this state the rule is even more liberally applied, according to the opinion of Chief

Justice Pleasants in Werner v. Pickering, 55 Tex. Civ. App. 632, 119 S. W. 333:

"It is a well-settled rule of decision in other jurisdictions that, when the appropriation of property is made in good faith under a mistake of facts, and the taker has by labor expended upon said property converted it into a thing entirely different from the original and of greatly increased value, the title to the property will pass to the person by whose labor the change has been wrought, and the original owner can only recover the value of the article at the time it was taken. Wetherbee v. Green, 22 Mich. 311; Baker v. Meisch, 29 Neb. 227; Carpenter v. Lingenfelter, 42 Neb. 728. This doctrine has been recognized and applied by the courts of this state in several cases in which the owner of timber taken by mistake was denied the right to recover the value of the timber in its manufactured state. Texas & N. O. Ry. Co. v. Jones, 34 Tex. Civ. App. 94; Young v. Pine Ridge Lumber Company, 100 S. W. 784.

"The general rule is that the owner of property has the right to all that becomes united or attached to it by accession. But when such accession is produced by the labor of another and the identity of the property is thereby changed, and its value greatly increased, the right to the property in its changed condition depends upon whether the person converting it acts in good faith, believing that the property was his at the time of the conversion. If taken under these circumstances the title to the property in its changed condition passes by accession to the person by whose labor its value has been so increased, and the original owner can only recover the value of the property in its condition at the time of the taking. On the other hand, a willful trespasser can acquire no right in property, it matters not how much he may increase its value, for the law will not permit one to take advantage of his own wrong."

The evidence brings this case very clearly within the rule stated, and the judgment of the court below is affirmed.