## Bozeman Mortuary Association v. Fairchild et al.
(Decided Feb. 20, 1934.)

C. C. WILLIAMS and R. B. BIRD for appellant.
JONES & LEWIS and B. J. BETHURUM for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The amount involved in this case is small, but the principle is important.

The appellant, a corporation, engaged in the business of a funeral director, in Bozeman, Mont., had a seven-passenger Buick automobile stolen in that city on July 26, 1931. On August 9th following, one Phillips was arrested in Rockcastle county, Ky., while in possession of that machine and its custody was taken over by the sheriff, N. J. Tipton. The arresting officer testified that Phillips was arrested for "shooting up a filling station." The jailer testified that he was charged with "stealing an automobile." The county judge testified that no criminal charge against Phillips appeared on his docket. For some reason not expressly disclosed by the record before us, Phillips was not tried, but was released in about three weeks. On December 1st the sheriff, Tipton, as an individual, filed suit against Phillips in the Rockcastle quarterly court on a claim for "a loan of money and garage bill" for $152, and an attachment was levied on the machine. Without either Phillips or the owner of the stolen machine being brought before the court in any way, judgment was rendered six days after the suit was filed, the attachment sustained, and the car ordered sold. The sheriff, officially, sold the machine to himself, personally, for $100. The date is not disclosed in this record, but a few months later, according to the appellee Fairchild, the sheriff's son-in-law, he traded him another machine for that automobile

When the owner, the appellant, sought afterward to recover its automobile, it could not do so amicably. It then brought this suit against Fairchild and Mrs. Lillie Tipton, widow of the former sheriff, to recover the machine or its value, and for $300 damages for its wrongful detention. Every allegation of the petition was denied and a counterclaim asserted for $130.48 for a battery, muffler, tires, and a few minor parts, and oil and grease furnished the car, also repairs and storage. An amended petition set up a claim for $250 damages for the depreciation in the car while the defendants had it and for $100 to cover expenses to which the plaintiff had been put by reason of the refusal of the defendants to surrender the car. The allegations of this amended petition were not denied by answer or controverted of record.

After the evidence was introduced before a jury, the court discharged the jury and rendered a judgment to the effect that the plaintiff was entitled to the possession of the automobile, but that the defendant Fairchild, having placed upon the machine what the court determined to be "necessary improvements" or accessories at a cost of $81.18, was entitled to a judgment on his counterclaim for that sum. A lien was adjudged him therefor, and the machine ordered sold to satisfy that lien. Although the plaintiff proved that the machine had four new tires of high grade when it was stolen and was in good repair, that it had been run several thousand miles since it was stolen, and had been used continuously by Tipton and by the defendants since coming into their hands, Fairchild admitted that he had run the car 3,000 miles since he had it, and the allegations of the amended petition stood undenied, all of these things were ignored by the court. He dismissed the petition entirely against Mrs. Tipton, and as to Fairchild held that, while the plaintiff was entitled to recover possession of the machine from him, it was subject to the lien stated.

The appellee has moved to dismiss the appeal on the ground that the amount involved is only $81.18, hence that this court is without jurisdiction. The petition as against Mrs. Tipton was dismissed altogether. As to the other defendant: Although the judgment does not by its express language dispose of the issues of damage claimed by the plaintiff, it is nevertheless to be regarded as a final judgment in that respect, for it effectually denied the claims by ignoring them. The plaintiff duly excepted to this order or judgment. Any other conclusion than that this was a dismissal of the petition in that respect would attach undue importance to technicality. De Zavala v. Scanlon (Tex. Com. App.) 65 S. W. (2d) 489. The plaintiff had pleaded damages and introduced evidence to sustain the plea, although rather indefinite as to amount. It was entitled to have at least the matter of damages for the wrongful detention submitted to the jury. There was no evidence as to how much the car had depreciated by reason of the defendant's use, and the expense incurred in an effort to recover the automobile could not be recovered as a matter of law. Civil Code Practice sec. 388; Kentucky Portland Cement & Coal Company v. Steckel, 164 Ky. 420, 175 S. W. 663. The amount involved, therefore, is

the sum of the proper damages claimed by the plaintiff, now appellant, plus the counter judgment for $81.18. The motion to dismiss the appeal, therefore, must be, and it is, overruled.

The law of accession, or acquisition of property by addition, had its origin in the civil law or Code of Justinian. From the beginning it has been regarded as the common law of England and so was transplanted into our jurisprudence. With the changing conceptions of justice and the growth of modern conditions, the original arbitrary rule has been ameliorated and made more varied in its meaning and application. This applicability to complex conditions renders hazardous any attempt to give a comprehensive definition.

A pioneer and perhaps the leading case in America is Chief Justice Robertson's opinion in Lampton's Ex'rs v. Preston's Ex'rs, 24 Ky. (1 J. J. Marsh.) 454, 19 Am. Dec. 104. The facts were that when Preston recovered possession of Lampton of a certain lot there was in the yard a quantity of unburnt and burnt bricks. The perplexing question was as to whom the bricks belonged, whether to Lampton, who did not own the soil out of which they were made but of which he was possessed at the time when he made the bricks, or to Preston, who was the true owner of the soil but who had no hand in making the bricks. After an exhaustive consideration of the principles and authorities, the final decision was reached. It was held that the unburnt brick belonged to Preston as the owner of the clay on payment for the molding, for although in the form of brick, and strictly speaking they could not be called clay, yet the material was still clay and might be combined in the common mass and constitute again a substratum for the soil, possessing all its previous qualities, so that the owner of the soil could identify the clay in the artificial form of soft brick and could recover it. But the burnt brick were held to belong to the manufacturer, Lampton, personally, because there had been an essential and radical change in the quality of the native clay through his labors. While the facts of that case are not in analogy to those of the case at bar, we may look to the opinion for the principles to be applied. We draw from it the division of cases of this nature into two classifications. Says the opinion:

"When the authorities speak of rights by 'ac-

cession,' they generally mean, accession of other materials as well as skill or labor; as in the case of the cloth manufactured out of the wool of a stranger, and of the manufacturer. Here the fabric would belong to the manufacturer; because the several parcels of wool could not be identified and separated. * * *

"Right by 'specification,' can only be acquired when, without the accession of any other material, that of another person, which has been used by the operator innocently, has been converted by him into something specifically different in the inherent and characteristic qualities, which identify it. Such is the conversion of corn into meal, of grapes into wine, etc. Here, although the meal possess no quality which the corn did not, yet it not only does not possess all the same qualities, but there is difference in the name, the character, the solidity, and every attribute which distinguishes one species from another. Meal and corn are as different, as lime and rock, or rye and whiskey."

The facts of the present case obviously place it under the classification where the rights are designated as by accession as distinguished from rights by specification, for there was no change in the form or transmutation in the species of the subject-matter. The consideration of relative values of the original and the new, which often has an important bearing in the adjustment of the title to chattels by accession, also supports this conclusion. 1 C. J. 385; Wetherbee v. Green, 22 Mich. 311, 7 Am. Rep. 653; Lampton's Ex'rs v. Preston's Ex'rs, supra; Carpenter v. Lingenfelter, 42 Neb. 728, 60 N. W. 1022, 32 L. R. A. 422

The new battery, tires, and other accessories put upon the automobile in substitution of those worn out—either by the defendants or others who had it after it was stolen—could yet be identified and be removed, which fact creates some difficulty and takes the case out of that line where there was such confusion or intermingling of properties as to make them inseparable. We do have some cases of this character, at least in respect to separability, to be noticed. Where the automobile or other chattel is subject to a conditional sale contract or mortgage, with respect to accessions the general rule is that title to the accessories will not pass

with the principal chattel when reclaimed by the conditional vendor or on foreclosure of the mortgage where they can be readily identified and detached without injury to it. Blackwood Tire & Vulcanizing Company v. Auto Storage Company, 133 Tenn. 515, 182 S. W. 576, L. R. A. 1916E, 254, Ann. Cas. 1917C, 1168; note 68 A. L. R. 1242. In those annotations are digested cases holding property to pass by accession and cases holding the contrary, the different conclusions depending upon whether the seller of the accessories (including specifically automobile tires and the like) had retained title to them. Berry, in his work on Automobiles, section 1806, shows that distinction, but couples with the matter of identity the important consideration of whether the accessory may be detached without injury to the principal chattel. The removal of these accessories (the cost of which apparently the trial court allowed) would destroy the machine's usefulness until the owner should replace them. It may be said, then, that these accessories were united to the principal thing so as to constitute an integral part of it and the owner of the greater acquired title to the lesser articles. Mather v. Chapman, 40 Conn. 382, 16 Am. Rep. 46. The installation of these items is not far removed from repairs to a chattel, and it is the rule that ordinary repairs become a part of the thing repaired by accession. 1 C. J. 384, and notes.

But our decision in this case may not rest wholly upon any conclusion in respect to the nature of the accessions, for the relation of the parties always has a controlling influence. We may look again to the Lampton Case for guidance. It is there said that there are two comprehensive and fundamental rules pervading the authorities "from the first of which it is not known that there are any exceptions, and from the last of which, it is believed that there cannot be many. These rules are: 1st. That no trespasser, who takes property of another wantonly and without the owner's consent, can ever acquire a right to it, by any 'accession' or 'specification,' whatsoever. 2d. When the property of one comes to the possession of another, innocently, he may acquire the right to it, if by 'accession' or 'specification,' the species be changed." But it is pointed out that the various and indifferent characters of the cases which have been excepted from this last rule result in difficulties. This distinction between a willful and an

involuntary wrongdoer or trespasser is uniformly recognized.

Upon the principle that a party can obtain no right by nor derive any advantage from his own wrong, the willful trespasser, as against the owner, can never acquire title to the thing itself and will never be allowed to reclaim the articles he has put upon it or commingled with it, or to receive their value, however great or small the change wrought in the original article may be, or however much or little the enhancement in value may be. C. J. 387; Annotations, 32 L. R. A. 422; Burris v. Johnson, 24 Ky. (1 J. J. Marsh.) 196; Lampton's Ex'rs v. Preston's Ex'rs, supra; Strubbe v. Trustees Cincinnati Railway, 78 Ky. 481, 39 Am. Rep. 251; Hyde v. Cookson, 21 Barb. (N. Y.) 92; Silsbury v. McCoon, 3 N. Y. 379, 53 Am. Dec. 307; Snyder v. Vaux, 2 Rawle (Pa.) 423, 21 Am. Dec. 466.

The second class of claimants, that is, those who come into possession of another's property innocently or under color of title and alter or add to it, are commonly referred to as unintentional trespassers. Their rights and the limitations upon those rights, upon the authority of a number of cases, including those we have cited, are thus stated in a general way in 1 C. J. 385:

> "One, although technically a trespasser, may, if he has acted under a mistake of right and without wrongful intent, acquire a right of property by accession. It is not, however, the policy of the law to offer any encouragement to trespassers, to put a premium upon carelessness in regard to the rights of others, or to make one person suffer for the mistake of another; and ordinarily a trespasser, although acting under a mistake of right, cannot acquire title to property by accession, as against the owner, where its identity is not lost and it has not been so increased in value as to make it obviously inequitable for the original owner to reclaim it."

See, also, 1 R. C. L. 124; Werner Stave Co. v. Pickering, 55 Tex. Civ. App. 632, 119 S. W. 333.

We are now led to the inquiry whether the defendant Fairchild is to be regarded as a willful or unintentional trespasser. He testified that he had no knowledge of the source of title to the machine of his father-in-law, the sheriff, and consequently did not know that it was

stolen property. There is no express evidence to the contrary, although we have the circumstances staring us in the face. We suppose we must give verity to the defendant's declarations of innocence and accept them. At any rate, we shall do so for the opinion. Even so, he stands, stript of any right to the property or the accessories he placed upon it, for the innocent purchaser from a willful trespasser or thief acquires no greater right than he. An owner is never divested of his property by theft, and therefore a sale by a thief, or by any person claiming under a thief, does not vest title in the purchaser as against the owner though the sale was made in good faith and in the ordinary course of trade. Title to personal property, like a stream, cannot rise higher than its source. An owner may follow his property and reclaim it wherever he may find it, whether the person who has it came into possession innocently or otherwise, for a thief cannot confer title even upon a bona fide purchaser. That defect in title will continue to exist in all subsequent sales. Basset v. Green, 63 Ky. (2 Duv.) 560; 17 R. C. L. 90, 92; 24 R. C. L. 375. And, as by way of illustration, a horse thief or one purchasing the stolen horse from him would not be permitted to remove and retain shoes put upon it in place of those worn out since the horse was stolen, nor to charge the cost to the owner.

In Strubbe v. Trustees Cincinnati Railway, supra, the railway company had purchased cross-ties made from timber cut from Strubbe's land by a trespasser and removed by him. He had sold the ties to the railway company's vendor, who also was a purchaser in good faith. In sustaining the owner's right to the ties, it is said, inter alia, in that opinion:

> "If the wanton trespasser acquires no title, he can pass none to a purchaser from him, and there is no rule of law that will preclude the owner from recovering the property itself or its value. Every purchaser of property must know, at his peril, of whom he is purchasing; and if his vendee has acquired the property as a trespasser, a purchase from him, although in good faith, cannot be relied on as a defense to the claim of the real owner. No demand is even required to be made of the innocent purchaser in such a case, because, having obtained the property from a wrongdoer, his possession is tortious."

See, also, Reid v. King, 89 Ky. 388, 12 S. W. 772, 11 Ky. Law Rep. 615; Sawyer v. Middlesborough Town Company, 17 S. W. 444, 13 Ky. Law Rep. 550.

That the sheriff may have been the bailee of the stolen machine, and therefore in lawful possession, can make no difference. In the early case of Chism v. Woods, 3 Ky. (Hardin) 531, 3 Am. Dec. 740, the bailee of a horse, without authority to sell it, did so to the innocent purchaser. In the course of the opinion holding that the owner of goods may maintain trover against the purchaser from a bailee, it is declared:

> "Between strangers and the vendees of personal goods, the maxim 'caveat emptor,' is properly applied to the purchaser."

See, also, 24 R. C. L. 375.

The form of judicial sale—void as is proven—even though it were valid, conferred no greater title in the purchaser than the thief had to the machine. We have an analogue, although the reason for the conclusion is distinguishable on the facts, in Ochoa v. Rogers (Tex. Civ. App.) 234 S. W. 693, 694. Ochoa's automobile was stolen and thereafter in some way came into the possession of the United States government and was sold by it at auction for $85 as junk, the car in the meantime having been practically demolished, so much so that the court describes it as being a pile of broken and dismantled parts and no longer an automobile. The purchaser at the auction sale used these parts in constructing a delivery truck at an expense of $800. Later Ochoa, the owner, recognized a part of his stolen machine and made claim to the truck, into the construction of which it and other parts of his machine had gone. He was allowed only $85 by the trial court. In affirming the judgment the appellate court thus clearly draws the distinction between that case and one like that now before us:

> "It is of course settled that, if Ochoa had found his property in the hands of the one who stole it, he would have been entitled to at once reclaim it in the condition it was then in. In such case the thief would not be entitled to consideration for any money he had expended in enhancing its value, and this would have been true as well of one who had obtained possession of the property knowing, or failing to exercise care to ascertain that the car was

stolen property. Or, if the one wrongfully in possession, being ignorant of the theft or of the invalidity of his title, expends only a nominal sum in improving the condition, or enhancing the value, of the car, or if the value of the repairs and improvement is substantially less than the value of the property when he obtained such wrongful possession, he would probably not be entitled to reimbursement. And in neither event could it be said that the character of the property had been so changed by accession as to pass title to the one in wrongful possession, so as to defeat the suit of the owner for possession. But if the one in wrongful possession be an innocent or unintentional trespasser, and in good faith improves and enhances the value of the property, and such improvements and additions exceed, or even substantially approach, the value of the article in its raw state when found, the property in dispute becomes merely accessory to the resulting product, and title thereto passes to the purchaser, who is liable to the original owner only for the market value of the lost article at the time it is found.''

Public welfare and public policy will not allow one to assert any rights to stolen property or to anything he spends or puts on it as against the owner. To hold otherwise would be to encourage the nefarious business of handling stolen automobiles which has grown to such amazing and alarming proportions.

Further pursuit of the subject would be merely to repeat the substance of the opinions, general and specific, in other and less impressive language. The conclusion of the whole case is that accessories put upon the stolen machine went with it to the owner, and that the plaintiff was entitled to have his claim for damages for the wrongful detention and the depreciation of his property given consideration by the court.

Wherefore the judgment is reversed and case remanded for a new trial consistent with this opinion.