CAPITOL CHEVROLET COMPANY,
Plaintiff,
Counter-Defendant-Appellant,

v.

Robert EARHEART, Defendant,
Third-Party Plaintiff,
Cross-Plaintiff-Appellee,

and

Dave CRASS, Defendant, Counter-Plaintiff, Cross-Plaintiff and Cross-Defendant-Appellee,

v.

Randy BENNETT, Third-Party Defendant, Third-Party Plaintiff and
Cross-Defendant-Appellee,

v.

W. A. SARTIN, Third-Party Defendant,
Third-Party Plaintiff-Appellee,

v.

Doug HORN, Third-Party Defendant and
Third-Party Plaintiff-Appellee,

v.

James Billy PACK, Third-Party
Defendant-Appellee.

Court of Appeals of Tennessee,
Middle Section.

Aug. 25, 1981.

Rehearing Denied Nov. 12, 1981.

Application for Permission to Appeal
Denied by Supreme Court Feb. 1, 1982.

Jacobs H. Doyle, Robert F. Doyle, Nashville, for plaintiff-appellant Capitol Chevrolet Co.

Patricia R. Young, Joe P. Binkley, Nashville, for defendant-appellee Robert Earheart.

Joseph L. Lackey, Jr., Nashville, for defendant-appellee Randy Bennett.

Robert A. Zika and Fred D. Thompson, Thompson & Crawford, Nashville, for defendant-appellee W. A. Sartin.

William R. O'Bryan, Jr., Trabue, Sturdivant & Dewitt, Nashville, for defendant-appellee Doug Horn.

Chesley V. Morton, Fort Lauderdale, Fla., John Stark, Nashville, for defendant-appellee Dave Crass.

James Billy Pack, pro se.

OPINION

LEWIS, Judge.

On May 1, 1975, a 1965 Chevrolet Corvette was stolen from William T. Revis of Indianapolis, Indiana. Subsequently, it was stripped and the stripped-down hull was bought by James Billy Pack from Howard's Used Cars. Pack then sold the stripped-down hull to Doug Horn, who sold it to W. A. Sartin on August 23, 1976, for the sum of $200.

Sartin used the stripped-down hull to build a functioning Corvette automobile with his own labor and materials and sold it to Randy Bennett for $4,750. Bennett then sold it to Robert Earheart for $4,775. Earheart then traded the car to Capital Chevrolet on May 7, 1979, for a 1979 Corvette. Capitol allowed $6,052 on the trade-in and Earheart paid the balance by check.

On May 9, 1979, Capitol Chevrolet sold the rebuilt 1965 Corvette to Dave Crass. It was stolen from Crass in Atlanta on June 12, 1979, and was recovered by the Atlanta police, who returned it to the original owner Revis on July 4, 1979. Revis had identified the car by the serial number remaining on the original hull of the car that had been stolen from him in 1975.

Crass has never paid anything to Capitol Chevrolet on the car, alleging he owed nothing because the car was stolen merchandise when sold to him. Capitol sued both Crass, its vendee, and Earheart, its vendor. Third-party suits have been entered back up the chain of title as far as Pack. Crass filed a counter-complaint against Capitol for selling him a stolen car.

The Chancellor, after a bench trial, found that all defendants were innocent purchasers acting in good faith. The Chancellor further found that Sartin acquired title by accession when he rebuilt the car, stating as follows:

When Sartin acquired the hull salvage, it was no longer an automobile. No part was intact. By making the improvements he acquired good title which he conveyed to Bennett and the others in the chain of title.

Any liability would be only to the true owner of the misappropriated property and limited to the value of the property innocently used which would be the scrap value of the hull.

Capitol Chevrolet conveyed good title to Crass and is entitled to a judgment against him for $7,257.00, plus $2,400.00 attorney's fee and the costs.

■ This case comes to this Court from a trial before the Chancellor without the intervention of a jury and with a presumption of the correctness of the judgment of the Chancellor. The Chancellor's judgment will be affirmed unless there is an error of law or unless the evidence is found by this Court to preponderate against the judgment below. *Smith v. Jarnagin,* 58 Tenn. App. 668, 436 S.W.2d 310 (1968); TRAP Rule 13(d).

Capitol, in this Court, contends (1) that the Corvette did not become the property of Sartin by reason of Sartin's improvements, (2) that all purchasers in the chain of title were not innocent good faith purchasers, (3) that Earheart breached an implied warranty of title under T.C.A. § 47–2–312 when he sold the car to Capitol, and (4) that Capitol is entitled to a security interest in the successor vehicle to the one it sold Earheart.

■ As to the first issue, all appellees rely on *Ochoa v. Rogers,* 234 S.W. 693 (Tex. Civ.App.1921). In that case a car had been stolen from Ochoa and subsequently purchased from the United States Government by Rogers. At the time it was purchased by Rogers, no part of the car was intact. It had no top, except part of the frame, no steering wheel, no tires, wheels, cushions, or batteries. The motor and radiator were present but removed from the car and the car overall was "a pile of broken and dismantled ... 'junk'." 234 S.W. at 694. Rogers paid $85 for it. Subsequently, Rogers used the parts to construct a delivery truck worth about $1000. Ochoa happened to see the truck, recognized the hood and radiator, and confirmed his identification by checking the serial numbers. He then brought suit for possession.

The Court held that title to the new vehicle was in Rogers, but that Ochoa was entitled to $85, the value of the scrap at the time Rogers purchased it.

It is ... the general rule that, where it can be shown that the labor and materials of an innocent trespasser contributed more to the value of the present chattel than those materials which he took without intending a wrong, he is entitled to keep the chattel as his own, making, however, due compensation to the owner of the materials for what he took.

*Ochoa v. Rogers,* 234 S.W. at 694, quoting Ruling Case Law.

In *Dunn v. Oneal,* 33 Tenn. 106 (1853), our Supreme Court stated:

It is a rule of both the civil and common law, that if the materials of A and B are united by the labor of B, who furnished the *principal materials*, the property in the joint product is in the latter by right of accession, the materials of the former being considered as only accessory. [Emphasis in original.]

33 Tenn. at 110. It will be observed that the facts described by our Supreme Court are precisely those of this case. If, of course, Sartin himself had not been an innocent purchaser he would have acquired no title to the car no matter how much he improved it. *Id. See also Ochoa v. Rogers,* 234 S.W. at 694.

■ We approve the following as conforming to the rule of *Dunn v. Oneal, supra.*

(3) Relative Values

....

Where the appropriation of the property was unintentional and labor or material has been expended or added which greatly enhances its value, and the value of the original article is insignificant in comparison with the value of the new product, the title to the property in its converted form will pass to the person who has thus expended or added his labor and materials, compensating the owner for the value of the original article or materials. Where the value of improvements placed upon a car by one innocent

of the invalidity of his title thereto is substantially less than the car's value at the time he obtained it, the true owner may reclaim his property; but if the improvements approach or exceed the value of the car, title passes to the purchaser who is liable to the owner for the market value of the car as it was when he obtained it.

. . . When it is remembered that what the law aims at is the accomplishment of substantial equity, it will be readily perceived that the fact that the value of the materials has been considerably increased is of more importance than any chemical change or mechanical transformation, which, however radical, is not expensive or does not materially add to the value. It is not the excess of the artificial over the natural value, but the degree of such excess that is the controlling principle.

. . . Where the identity of the original article is susceptible of being traced, the idea of a change in property is never admitted, unless the value of that which has been expended upon it is sufficiently great, as compared with the original value, to render the injustice of permitting its appropriation by the original owner so gross and palpable as to be apparent at the first blush.

1 C.J.S. *Accession* § 5 (1936).

The above rule hinges on the good faith of the innocent trespasser and is unavailable to a thief or to one who obtains possession knowing the property is stolen or fails to exercise due care to ascertain that it is stolen. *Dunn v. Oneal, supra; Ochoa v. Rogers, supra.*

■ We next consider Capitol's second contention: That the members of the chain of title were not innocent purchasers acting in good faith.

As stated by Capitol, this argument reduces to a contention that Sartin should have obliterated the vehicle identification number and secured a new one from the Tennessee Motor Vehicle Registration and Title Division. In its brief, Capitol states: "[The] failure of defendant, Sartin, to [secure a new vehicle identification number]

made it possible for the Police Department of Atlanta, Georgia, to identify the vehicle as belonging to William T. Revis of Indianapolis, Indiana." This is the sum and substance of Capitol's argument on this issue.

We fail to see how failure to alter or obliterate the vehicle identification number is in anywise indicative of bad faith on the part of Sartin. If anything, it is probative of good faith and innocence. The course of action urged by Capitol is what would be probative of bad faith.

■ Our review of this record sustains the Chancellor's finding that Sartin acquired title to the car by accession and that all defendants herein acted in good faith. Earheart conveyed good title to Capitol Chevrolet, which conveyed the same to Crass. Crass is the owner of the car less any claim held by the original owner Revis to an amount corresponding to the value of the unimproved stripped-down hull purchased by Sartin.

While we have considered the other issues raised by Capitol, we do not, in view of our holding, deem it necessary to address them.

The judgment of the Chancellor is affirmed with costs to appellant Capitol Chevrolet; and the cause is remanded to the Chancery Court for the collection of costs and any further necessary proceedings.

CANTRELL, J., concurs.

TODD, P. J. (M. S.), concurs in separate opinion.

TODD, Presiding Judge, Middle Section, concurring.

I concur in the result reached by my colleagues, but must express some reservations as to the content of the opinion and the rights of parties not determined herein.

I respectfully differ with the statement in *Ochoa v. Rogers*, Tex.Civ.App. 1921, 234 S.W. 693, that one who incorporates an identifiable stolen part into a reconstructed vehicle thereby acquires title to the stolen part by accession so as to defeat the claim of the true owner of the part for possession. The award of the value of the stolen part

does not necessarily make him whole, for the judgment awarded may be uncollectible. Theft cannot deprive an owner of title to his property, and requiring him to substitute a money claim for his property is an unconstitutional taking of private property for a private use.

In *Dunn v. O'Neal*, 33 Tenn. (1 Sneed) 106 (1853), the Supreme Court of Tennessee said:

> . . . Nor can the plaintiff claim title to the defendant's materials, upon the ground that he had converted them to his own use and become liable for their value. He can acquire no title by a wrongful act, unless the defendant thinks proper to abandon his property and accept a satisfaction in value. For the rule is that, "whatever alteration of form any property has undergone, the owner may seize it in its new shape, if he can prove the identity of the original materials." *Betts v. Lee*, 5 Johns. 348. (33 Tenn. at 110)

The doctrine of accession has been discussed and applied in a number of cases, but is not universal in scope. It definitely should not be applied in cases of stolen property which is clearly identifiable.

It is true that the present case presents a situation in which the payment of the value of the stolen part to the owner would be far more practical than to dismantle the vehicle to restore the stolen part to the owner. However, the principle of rights in property is more important than avoiding the practical difficulty of applying the principle in a given case.

Even though the owner of the stolen part should be allowed to follow and reclaim it, this does not mean that he should be entitled to claim the entire vehicle under the doctrine of accession.

The doctrine was designed to produce justice, and it should be applied when it produces a just result. It should not be applied when it will produce an unjust result.

The owner of the stolen part is not a party to this case, hence his rights may not be determined herein. However, the right of the owner to reclaim his identifiable stolen part as urged in this opinion, or the right of the owner to recover the value of such part as recognized in the majority opinion may well ultimately result in one or more of the parties to this case suffering loss from the claims of the owner. The rights of the parties hereto to seek indemnity in event of loss from the claims of the owner should not be precluded by the decision herein, but should be expressly reserved.

### ORDER ON PETITION TO REHEAR

We have considered Capitol Chevrolet's Petition to Rehear and are of the opinion that it is not well taken.

We reviewed *Rundle v. Capitol Chevrolet, Inc.*, 23 Tenn.App. 151, 129 S.W.2d 217 (1939), and considering the factual situation find no conflict between *Rundle* and the case at bar.

The arguments put forth in the Petition to Rehear were considered by the Court in its original opinion. A rehearing will not be granted to permit reargument of matters fully argued. Rule 39(a), TRAP.

TODD, P. J. (M. S.), and CANTRELL, J., concur.