## KIRBY LUMBER COMPANY V. TEMPLE LUMBER COMPANY.

No. 6141.    Decided May 22, 1935.
(83 S. W., 2d Series, 638.)

*T. B. Hamilton,* of Hemphill, *John B. Forse,* of Newton, *Williams, Lee, Sears & Kennerly, Andrews, Kelley, Kurth & Campbell, Thomas D. Anderson,* and *E. J. Fountain, Jr.,* all of Houston, and *Ben H. Powell,* of Austin, for plaintiff in error.

A bona fide purchaser of an undivided interest in land from the record owner thereof takes title to such land free of any oral partition or other equities existing between co-tenants. Chace v. Gregg, 88 Texas, 552, 32 S. W., 520; Patty v. Middleton, 82 Texas, 586, 17 S. W., 909; Kirby Lumber Co. v. Smith,

185 S. W., 1068; Houston Oil Co. v. Kimball, 103 Texas, 94, 124 S. W., 85; Fiske v. Flores, 43 Texas, 342.

*J. W. Minton,* of Hemphill, *R. E. Minton,* of Lufkin, *W. T. Davis,* of San Augustine, *Baker, Botts, Andrews & Wharton* and *S. H. German,* all of Houston for defendant in error.

As a co-tenant plaintiff and its vendors had received, with the timber left for it, more than its full share and portion of the common estate. Clark Bros. v. Watson, 163 N. W., 463; Nickels v. Miller, 101 S. E., 68; Hanrick v. Gurley, 93 Texas, 458.

Plaintiff was chargee as a matter of law under the facts of the case with notice of parol partition. White v. McGregor, 92 Texas, 556, 50 S. W., 564; Jones v. Berg, 177 Pac., 712; Continental Ins. Co. v. Cummings, 95 S. W., 48.

MR. JUSTICE CRITZ delivered the opinion of the court.

This suit was filed by the Kirby Lumber Company, a corporation, against Temple Lumber Company, also a corporation, as an action in trover, to recover the manufactured value of one-third of the timber cut by Temple Lumber Company from a certain tract of 427 acres of land in Sabine County, Texas. Trial in the district court with a jury resulted in a verdict and judgment for Kirby Lumber Company for $53,100.98. On appeal by the Temple Lumber Company the Court of Civil Appeals at Beaumont reversed the judgment of the trial court, and rendered judgment for the Temple Lumber Company. 42 S. W. (2d) 1070. Kirby Lumber Company brings error.

It appears from the opinion of the Court of Civil Appeals, and also from the record, that Thompson Allen was the common source of title to 640 acres of land patented to James S. Ogden in Sabine County, Texas. Allen died leaving six children. Two of these children conveyed their respective undivided one-sixth interest each to John A. Morris, thus vesting him with an undivided one-third interest in the 640 acre tract. The other four children of Thompson Allen conveyed their respective undivided one-sixth interest each to W. W. Weatherred, thus vesting him with an undivided two-thirds interest in the 640 acre tract.

It appears that after Morris and Weatherred became joint owners of the entire 640 acre tract in the proportions of one-third and two-thirds respectively, they made a parol partition thereof between themselves; Morris taking 213 acres, and Weatherred 427 acres. These respective tracts so partitioned

were surveyed and marked on the ground so that each owner knew definitely his own tract. It further appears that at the time of such partition the 640 acres was generally of uniform value as to timber and otherwise. In this connection the record shows indisputably that the timber on the 213 acres partitioned to Morris constituted one-third of the timber on the entire 640 acre tract, and that the timber on the 427 acres partitioned to Weatherred constituted two-thirds of the timber on the enire 640 acre tract.

The further history of the John A. Morris title is as follows:

Morris conveyed his undivided one-third interest to J. O. Toole. Toole conveyed his undivided one-third interest to A. D. Hamilton. Hamilton, joined by John H. Kirby, conveyed the undivided one-third interest to Houston Oil Company. Houston Oil Company conveyed the same interest to Southwestern Settlement and Development Company. Southwestern Settlement and Development Company, joined by Houston Oil Company, conveyed the timber on this undivided one-third interest to Kirby Lumber Company. Every conveyance in the Kirby Lumber Company's chain of title described the land conveyed as an undivided one-third interest in the 640 acre tract.

Weatherred conveyed to Benjamin F. Van Meter the specific 427 acres of land set apart to him in the partition between him and Morris. This deed described the 427 acres so as to identify it in severalty. This deed also contained a statement to the effect that the 427 acres therein conveyed was a part of the James S. Ogden Survey of 640 acres, and that the land therein conveyed was all of said Ogden Survey except 213 acres off the East end thereof owned by John A. Morris. This deed then referred to the county records of Sabine County. Van Meter conveyed to C. P. Huntington, and this deed also specifically described and conveyed the 427 acre tract. Huntington conveyed to George E. Downs. The 427 acres were also specifically described in this deed.

As we understand this record it is then shown that Temple Lumber Company holds title to its two-thirds interest in the Ogden 640 acre survey by mesne conveyances from George E. Downs, which conveyances describe the land as an undivided two-thirds interest in the 640 acre Ogden tract. It thus appears that Temple Lumber Company's chain of title contains some deeds, at the remote end thereof, specifically describing the 427 acre tract set apart to Weatherred, its predecessor in title, and some deeds at the immediate end of its chain de-

scribing the interest conveyed as an undivided two-thirds of the original 640 acre tract.

It is further indisputably proven that after Morris and Weatherred made their parol partition, Morris entered into exclusive possession of his 213 acres and cut timber therefrom. Thereafter, Morris sold to Toole, and Toole cut timber therefrom. Both Morris and Toole understood that they owned that specific 213 acres of land. These two parties, as above shown, were Kirby Lumber Company's predecessors in title.

It appears that Temple Lumber Company, in 1924, or about that time, and after it had acquired the title above described, to two-thirds of this 640 acre tract, claimed the 427 acres partitioned to Weatherred in severalty, and began cutting timber therefrom. On learning of such cutting Kirby Lumber Company notified Temple Lumber Company that it owned an undivided one-third of the timber on the entire 640 acre tract, and objected to the Temple Lumber Company cutting any part of the same until a partition could be had between the two companies. Temple Lumber Company seems to have informed the Kirby Lumber Company that it claimed the 427 acres set apart to Weatherred in severalty, and that Kirby Lumber Company owned in severalty the timber on the 213 acres set apart to Morris. Kirby Lumber Company denied that either it or Houston Oil Company, and certain others of its predecessors in title, had any notice of the parol partition between Morris and Weatherred, and very pointedly instructed Temple Lumber Company to desist from cutting timber until a partition could be had between the two companies. Temple Lumber Company disregarded such instruction and proceeded to cut the timber from the 427 acres set apart to Weatherred, its remote predecessor in title. The suit followed.

The jury found in response to questions submitted to them in the charge of the court:

1. That at the time the Temple Lumber Company cut the timber on the 427 acre tract there was standing on the 213 acre tract 2,783,325 feet.

2. That Temple Lumber Company cut and manufactured from the 427 acre tract timber to the amount of 10,000,000 feet.

3. That the reasonable market stumpage value of the timber cut by Temple Lumber Company was $5.00 per thousand feet.

4. That in cutting and manufacturing the timber cut from the 427 acre tract the Temple Lumber Company acted negli-

gently, and in reckless disregard of the rights of the Kirby Lumber Company.

The record shows that the manufactured value of the timber cut from the 427 acre tract by Temple Lumber Company was $29.25 per thousand feet. In fact the Temple Lumber Company seems to have pleaded this value.

The undisputed record shows that after the parol partition of the 640 acres of land between Morris and Weatherred, Morris went into possession of the 213 acres set apart to him in severalty, and he and J. O. Toole, his successor in title, who had notice of such partition, cut and appropriated timber from such 213 acres in such amounts that if Kirby Lumber Company's interest is charged therewith, Temple Lumber Company has appropriated no more than its proportionate share of the timber from the 640 acres, and this even though it be admitted that it and Kirby Lumber Company are tenants in common as to the timber on the 640 acres.

After receiving the above verdict the trial court affirmatively found that there had been a parol partition of the 640 acres of land between Morris and Weatherred whereby the 213 acres was set apart in severalty to Morris, the remote grantor of Kirby Lumber Company, but Kirby Lumber Company and several of its predecessors in title were bona fide purchasers without notice of such oral partition. The trial court made no affirmative finding on the question as to whether Kirby Lumber Company or any of its predecessors in title, were bona fide purchasers without notice of the timber cut and appropriated by Morris and Toole. Also this question was not submitted to the jury, and neither lumber company requested its submission or excepted to the charge for failure to submit such question. In this condition of the record we will presume that the trial court found on this issue in favor of Kirby Lumber Company.

Based on the above record the trial court entered a judgment on the theory that before the cutting of the timber by Temple Lumber Company the two lumber companies were tenants in common as to all the timber on the 640 acres, in the proportion of one-third to Kirby Lumber Company, and two-thirds to Temple Lumber Company. By this theory the trial court took the sum of 10,000,000 feet of timber cut by Temple Lumber Company on the 427 acres and 2,783,325 feet of timber left standing on the 213 acre tract as the total amount of timber on the 640 acres before Temple Lumber Company began cutting. It was found that the sum of the above two

amounts was 12,783,325 feet of timber. It was then found that Kirby Lumber Company's one-third of such timber was 4,261,108 feet. The amount of timber left standing on the 213 acres was considered as belonging to Kirby Lumber Company and such timber, 2,783,325 feet, was deducted from the 4,261,108 feet leaving a net balance of 1,477,783 feet of timber that Temple Lumber Company had cut that belonged to Kirby Lumber Company. It was then adjudged that Temple Lumber Company was due to pay Kirby Lumber Company for the 1,477,783 feet of excess timber at its value manufactured into lumber, $29.25 per one thousand feet. This amounted to $43,-372.93. The trial court then added to the sum last mentioned $10,409.48, being interest at six per cent per annum from April 1, 1925, (four years). The trial court then gave Kirby Lumber Company judgment against Temple Lumber Company for the total of the two sums last above mentioned less the sum of $681.43. This last sum was for $510.43 on a matter not in dispute with six per cent interest on such sum of $510.43 from September 1, 1923. The net judgment awarded Kirby Lumber Company against Temple Lumber Company was $53,100.98 with six per cent interest from date of such judgment.

1 If we correctly interpret its opinion, the Court of Civil Appeals held that Morris and Weatherred effected a valid parol partition between themselves by the terms of which Morris took in severalty the 213 acres and Weatherred took in severalty the 427 acres. The Court of Civil Appeals also held that this partition was binding between Morris and Weatherred and those claiming under them respectively with notice thereof, but that it was not binding on Morris' remote vendees who bought without notice of such partition. The Court of Civil Appeals then held that the trial court was supported by the record in finding that Kirby Lumber Company and certain of its predecessors in title, remote successors in title to Morris, had no notice, actual or constructive of such partition and therefore Kirby Lumber Company was not bound thereby. The evidence regarding notice as to this partition is fairly stated in the opinion of the Court of Civil Appeals. In our opinion it justified the trial court and Court of Civil Appeals in their conclusions of fact and law in this regard. Allday v. Whitaker, 66 Texas, 669, 1 S. W., 794.

If we further correctly interpret the opinion of the Court of Civil Appeals it holds that though Kirby Lumber Company and several of its predecessors in title, did not have notice of the parol partition of the 640 acres between Morris and Weath-

erred, still it and its predecessors in title back to Morris and Toole had notice of the fact that Morris and Toole had cut the timber from the 213 acres and therefore Kirby Lumber Company should be charged with such cutting. In this regard we interpret the opinion of the Court of Civil Appeals to hold that because the record shows that much timber had been removed from the 213 acres at the time Kirby Lumber Company and its predecessors back to Morris and Toole took title, and because the record shows that evidence of such cutting was plainly visible on the ground at the time Kirby Lumber Company and its predecessors took title, Kirby Lumber Company and its predecessors were thereby charged with notice of such cutting. In regard to this matter we quote the following from the opinion on rehearing of the Court of Civil Appeals.

"Also appellee says we are in conflict with Allday v. Whitaker, which holds that the interest of a tenant in common may pass to a bona fide purchaser, and 'this court now holds conflicting therewith in holding that appellee is chargeable with equities unknown to it.' We expressly recognize the force of Allday v. Whitaker, and predicate our holding thereon that appellee was not visited with notice of the parol partition made by Morris. But, as said above, the Supreme Court expressly limited that case to the issue of partition. In our original opinion we found that appellee was visited with notice of the waste because it was compelled, as a matter of law, to know that timber had been cut and removed from the 213 acres, and was also compelled by law to follow up this information, which, had it been duly prosecuted, would have led to the fact that the timber on the 213 acres was cut by Morris."

2 We agree that the record conclusively shows that much of the timber had been cut from the 213 acres, and that evidence of such cutting was visible on the ground at the time the Kirby Lumber Company, and its predecessors back to Toole, purchased. But we are not prepared to agree to the holding that such facts, as a matter of law, put the purchasers on notice of the further fact that their predecessors did such cutting.

It is impossible for us to announce any hard and fast standard by which it can always be absolutely determined when a fact is conclusively established so as to present a pure question of law. We can simply say that when the evidence is such that reasonable minds cannot differ as to its verity and inference it presents a law question only.

Measured by the above rule we cannot agree to the conclusion that this record presents a law question only on the issue

of notice as to who cut the timber on the 213 acres. It is true, as held by the Court of Civil Appeals, that "when certain facts are called to a purchaser's attention, sufficient, if followed up with diligence, to visit him with notice of existing equities, the law visits him with such notice as fully as if the equities had been directly called to his attention," but we cannot subscribe to the conclusion that the mere fact that the surface of the land discloses that some half a century before purchase, some person or persons had cut timber therefrom, as a matter of law, called on the purchaser, as a reasonably prudent person, to make inquiry as to who did it.

Counsel for Temple Lumber Company insists that since it is conclusively shown that Kirby Lumber Company's predecessors in title, cut the timber in question, it is charged with notice thereof, as a matter of law. This contention is based upon the proposition that it is a rule of law that a purchaser from a co-tenant with mere notice of the co-tenancy, takes subject to all equitable rights of the other co-tenants, and that regardless of whether it has actual or record notice of such equities. Among others, the following authorities are cited in support of such proposition: Mast v. Tibbles, 60 Texas, 301; Allday v. Whitaker, 66 Texas, 669, 1 S. W., 794; Foster v. Johnson, 89 Texas, 640, 36 S. W., 67; Hanrick v. Gurley, 93 Texas, 458, 54 S. W., 347; Broadway v. Stone (Com. App.), 15 S. W. (2d) 230; Republic Production Co. v. Collins (Civ. App.), 7 S. W., (2d) 187; Gillum v. Railroad, 5 Texas Civ. App., 338, 23 S. W., 717. We have examined all these authorities and are compelled to the conclusion that none of them sustain Temple Lumber Company to the extent here contended for. We think none of these authorities hold that an innocent purchaser from a co-tenant is charged in law with notice of all equitable rights of the other co-tenants.

3 In regard to the matter under discussion we hold that a bona fide purchaser from a co-tenant without notice of any equities that exist between such co-tenant and the other co-tenants, takes not charged therewith. 62 C. J., p. 551, sec. 232; 27 R. C. L., p. 723, sec. 487; Burns v. Dreyfus, 69 Miss., 211, 11 So., 107, 30 Am. St. Rep., 538; Van Cleve v. Meyer, 108 New Jer., Eq., 421, 155 Atl., 482; Articles 6627 and 6631, R. C. S. of Texas, 1925.

In 62 C. J., supra, the rule is thus stated:

"As a conveyance of the undivided interest by one tenant in common ordinarily operates to transfer the exact interest of the grantor, the grantee can acquire no greater interest than

that of his grantor, and a grantee with notice takes subject to the equities of the other co-tenants, although the rule is held to be otherwise in the absence of sufficient notice. Under the general rule that a purchaser in possession cannot dispute the title of his vendor, the purchaser of the undivided interest of a tenant in common cannot assert as against such tenant a title subsequently acquired."

27 R. C. L., supra, thus stated the rule:

"As a general rule where a person occupies premises, and the record shows a conveyance under which he would be entitled to the possession, his possession will be referred to the record title, and a subsequent purchaser will not be charged by it with notice of any other undisclosed title or equity which the occupant may have. The possession is a matter tending to excite inquiry, but the fact that the occupant has placed upon the public records written evidence of his right, with the terms of which his possession is consistent, arrests inquiry at that point, and reasonably informs the purchaser that he may rest upon the knowledge thus obtained. And though there are authorities to the contrary, it generally is held that where the record title is in cotenants, the possession of one cotenant is referable to his title as cotenant and is not notice of additional rights. Thus it has been held that where a tenant in common of land, who is in possession, purchases the interest of his cotenant, who is not in possession, and fails to have his deed recorded and there is no visible change in the possession of the land, though some improvements are made thereon, and subsequently the interest of the cotenant who has conveyed is sold on execution, the purchaser of such interest, who had no actual knowledge of the prior conveyance, and did not know that the improvements were made exclusively by the purchasing cotenant, is not chargeable with notice of such cotenant's rights under his unrecorded deed. It has also been held that if, according to their title as shown by record, certain persons are tenants in common of a mining claim, the occupancy by each of a separate portion of the surface, with the payment of taxes and the making of improvements, imparts no notice to subsequent purchasers or incumbrances that he claims a surface interest in severalty. The registration of a will by the executor therein named, to whom the land is devised, has been held not to restrict the generality of notice of his rights afforded by his possession. The fact that the possessor holds under a recorded deed, the grantor in which appears from the records to have no title, does not restrict the

possession to notice of a title under such deed and prevent the possession from being notice of any other title which he may in fact have had, such as an unrecorded deed from another grantor. In some jurisdictions the courts do not restrict the effect of possession as notice to a particular title which itself would have justified the possession; and it has been held that where a husband, entitled to curtesy or so-called dower in his wife's land, remains in possession after her death, this is notice of his title under an unrecorded deed from the wife."

In Burns v. Dreyfus, supra, the Supreme Court of Mississippi had before it a case in which the issues, as stated by the court were:

"John W. Burns, who was a tenant in common with Edward and Elizabeth Burns of certain estate in the city of Jackson, had possession of the property and received and appropriated the rents for several years. Subsequently, he gave to Dreyfus and Ascher a trust deed of the property to secure a debt he owed them. The debt not having been paid, the trustee, in pursuance of a power of sale, advertised his interest in the property to be sold. The other tenants in common thereupon filed their bill, making Dreyfus and Ascher, their trustee, and John W. Burns parties defendant, praying for a sale of the property for partition, and asking that a lien be decreed in their favor on the interest of John W. Burns for the amount to be found due them on an accounting in respect to receipts and disbursements, and that this lien be given priority over the lien of the trust deed. An injunction was also asked and obtained to enjoin the sale. Dreyfus and Ascher answered, denying the equity of the bill, and asserting priority of their claim under the trust deed as to a one-third interest in the property. They moved to dissolve the injunction, and asked an allowance of five per cent on the amount of the debt and a reasonable solicitor's fee as damages. On the hearing of the motion, it was shown that John W. Burns was insolvent, and that he had appropriated the rents. A decree was entered, modifying the injunction so as to allow the trustee to sell the interest of John W. Burns to pay the debt of Dreyfus and Ascher. From this decree the complainants appealed, the chancellor allowing a supersedeas, and Dreyfus and Ascher appealed from so much of the decree as refused to grant them damages on the dissolution of the injunction."

In passing on the rights of the bona fide purchasers from a co-tenant as to equities existing between such co-tenant and the other co-tenants the court said:

294

"We recognize to its full extent the equitable principle that in the partition of lands held in common the court will, in the division of the property, or of its proceeds if indivisible, and therefore sold for partition, do full justice between the co-tenants by directing accounts to be taken of receipts and disbursements by them, and will so apportion the fund as to do complete equity. This rule of equitable administration is frequently spoken on as a 'lien' in favor of one co-tenant against the interest of the other, but it has never, so far as we are advised, been held to be entitled to priority over the right of a bona fide purchaser or encumbrancer of the interest of one co-tenant in the common estate.

"The contention of the complainants is, that a purchaser of the interest of one tenant in common takes his estate subject to the right of the other co-tenants to subject it to whatever may, on a final accounting, be found due to them from his vendor. If there is any authority for this position, we have not been referred to it, and we know of none. Certainly, the cases cited by counsel do not support his contention, and so far as we can see, have no relevancy to the point. It would require many cases to constrain us to yield our assent to the proposition contended for. We do not believe one can be found, and we approve the decree of the chancellor in so far as it is presented by the appeal of complainants. On dissolution of the injunction, the defendants Dreyfus and Ascher were entitled to the statutory damages, as provided by section 1918 of the code."

In Van Cleve v. Meyer, supra, the New Jersey Court announced the rule as follows:

"The complainants argument that Meyers was put on notice because the property was held in common by Van Cleve and Pedrick and that inquiry of Van Cleve would have disclosed the true situation is without force. There is no privity of estate between tenants in common. 7 R. C. L., 818. Inquiry of a co-tenant is not a duty imposed upon a purchaser of a common interest to protect him as a purchaser in good faith. A co-tenant's possession under a record title is referable to that title and the purchaser may rely on the record. 27 R. C. L., 723; H. C. Tack Co. v. Ayers, 56 N. J., Eq., 56; 13 L. R. A. (N. S.), 124."

By their brief in the Supreme Court counsel for Temple Lumber Company cite Clark Bros. v. Watson, 180 Iowa, 721, 163 N. W., 463; Nickels v. Miller, 126 Va., 59, 101 S. E., 68; Peets v. Wright, 117 S. C., 409, 109 S. E., 649; Vaughan v.

Langford, 81 S. C., 282, 62 S. E., 316, as supporting their proposition that a purchaser from a co-tenant takes charged in law with the equities that existed between the co-tenants, as such at the time of purchase.

In Clark Bros. v. Watson, supra, the Supreme Court of Iowa does recognize the rule as contended for by counsel for Temple Lumber Company. However, an examination of the facts of that case as disclosed by the opinion shows that the question was not directly before the Court for decision.

In Nickels v. Miller, supra, the Supreme Court of Virginia seems to uphold the rule as contended for by counsel for Temple Lumber Company. We quote the following from the opinion:

"When the tenant in common conveys his undivided interest in land held in common, the grantee in the deed is a tenant in common with the other owners thereof, and one who receives a conveyance from one who owns an undivided interest in land, whether acquired by descent or purchase, can acquire thereby no greater right than that which his grantor had."

In Peets v. Wright, supra, the parties took by will or inheritance, and the rights of a purchaser from a co-tenant were not involved. Neither do we find any expression in the opinion that upholds the rule contended for by counsel for Temple Lumber Company.

To our minds the opinion in Vaughan v. Langford, supra, sustains the rule as we have announced it. The opinion in that case holds that a co-tenant may recover the value of improvements placed by him on land only after deducting therefrom the value of his use of the land, and that the heirs of such co-tenant cannot claim in a partition proceeding more than the share to which their ancestors would have been entitled. The opinion then holds that no lien arises in favor of a co-tenant against the share of another co-tenant for such rents. The Court calls attention to the fact that such liens would be indefinite in amount and undisclosed by public records upon which third parties in dealing with the property ordinarily have a right to rely. The Court then further says: "They would greatly injure tenants in common by impairing the market value of their shares and interests because of the apprehension on the part of those contemplating purchasing such interests, or otherwise dealing with them, that claims for rent might be established as superior liens." The Court then says:

"But the absence of a lien does not render a court of equity powerless to require co-tenants to do full justice to each other,

with respect to all their dealings with the common property, when the rights of third parties are not involved. Accounting for waste, for betterments, and for rents among co-tenants is now recognized as an incident to the right of partition, and the universal practice of the court of equity is to adjust all these matters in the suit for partition. Value added to the land by a co-tenant in the form of betterments will be allowed and paid to him from the proceeds of the sale made for partition. Johnson v. Pelot, 24 S. C., 265, 58 Am. Rep., 253; Buck v. Martin, 21 S. C., 594, 53 Am. Rep., 702; Sutton v. Sutton, 26 S. C., 40, 1 S. E., 19. On the same principle, when the rights of third parties are not involved, a co-tenant ought not to be allowed to have his share of the proceeds of sale without first accounting for waste committed by him on the common property, and the rents and profits derived by him therefrom. * * *."

It will be noted that in the case just discussed and quoted from the Supreme Court of South Carolina holds that the absence of a lien does not render a court of equity powerless to require co-tenants to do full justice to each other as regarding wastes, betterments and rents, *"when the rights of third parties are not involved."* (Italics ours). It is clear from the whole opinion that the Court intended to say that equities between co-tenants cannot be adjusted so as to violate the rights of third parties who have purchased from co-tenants without notice of equities or liens against such co-tenants' interest in favor of another co-tenant, and what the court had to say about undisclosed liens impairing the market value of the shares of co-tenants applies with tremendous force to the case at bar, where the equity sought to be charged against Kirby Lumber Company is more than half a century old, and arose out of waste committed by its remote grantors.

4 It is evident from what we have said that we do not agree with the judgment of the Court of Civil Appeals wherein the judgment of the district court was reversed and judgment rendered for Temple Lumber Company. It therefore becomes necessary for us to consider and decide certain other law questions presented by this appeal. These questions were not passed on by the Court of Civil Appeals because under the view they took of the case they were not reached.

Temple Lumber Company contends that the law of manufactured value cannot be applied against it in this instance for two reasons:

1. Because the law of manufactured value has no application as between co-tenants.

2. Because the facts of this case do not justify the application of the law of manufactured value even though in some instances it should be applied as between co-tenants.

We are inclined to the view that where one co-tenant merely cuts and appropriates more than his share of the standing timber on land owned jointly by himself and others, he cannot be charged by the other joint owners with the manufactured value of such excess timber, for in cutting the timber he makes no unusual use of the real estate of which he is a tenant in fee, and he cannot be classed as a trespasser. DeWitz v. Saner-Whiteman Lumber Co. (Civ. App.), 155 S. W., 980; Freeman on Co-tenancy & Partition (2d Ed.), sec. 251; Baker v. Wheeler & Martin, 8 Wend. (N. Y.), 505, 24 Am. Dec., 66, and notes. In such a case the remedy of the co-tenant not cutting the timber against the co-tenant cutting more than his share is for the value of the excess of such timber in its original form. DeWitz v. Saner-Whiteman Lumber Co., supra; Baker v. Wheeler, supra. In spite of this rule the DeWentz case, supra, seems to recognize the fact that the rule of manufactured value may be applied between co-tenants where the co-tenant cutting and appropriating more than his share of the timber ousts his co-tenant and claims adversely to him. In other words, the authorities seem to recognize the fact that the issue of trespass may be involved where one co-tenant ousts another co-tenant, and claims adversely to him. It seems to us that in such instances the co-tenant ousting his co-tenant should be classed as a trespasser. Of course in such instances certain other facts must exist before manufactured value can be applied. We shall later discuss these facts.

In the case at bar the evidence will justify the conclusion that Temple Lumber Company cut this timber while denying that Kirby Lumber Company had any interest therein. Also we think the evidence will sustain the conclusion that at the time Temple Lumber Company cut this timber and appropriated it to its own use it claimed title to the 427 acres from which the timber was cut in severalty. Also it claimed title in severalty to all the timber on such 427 acres, and denied that Kirby Lumber Company had any interest in any timber on such 427 acres. It therefore denied that Kirby Lumber Company had any right to enter on such 427 acres for the purpose of taking any of such timber. Under such a record we are compelled to the conclusion that the trial court was justified in his implied finding that in cutting and appropriating this timber under the circumstances above detailed, Temple Lumber

Company did so in denial of the rights of Kirby Lumber Company, while claiming adversely to it, and under the circumstances amounting to its ouster.

In spite of what has just been said we think the record before us does not justify the application of the manufactured value rule in measuring Kirby Lumber Company's damages in this case. The doctrine of manufactured value is based upon the rule of law that a party whose property has been tortuously taken is entitled to it or its enhanced value until it has been so changed as to alter the title. Under such a rule it is held that the owner of timber may reclaim it when manufactured into lumber, cross-ties, shingles, etc. The E. Bolles Woodenware Co. v. United States, 106 U. S., 433, 1 Sup. Ct., 398, 27 L. Ed., 230; Young v. Pine Ridge Lumber Co. (Civ. App.), 100 S. W., 784; Louis Werner Stave Co. v. Pickering (Civ. App.), 119 S. W., 333; Texas & N. O. R. Co. v. Jones' Ex'rs. (Civ. App.), 77 S. W., 955; Baker v. Wheeler & Martin, supra; DeWitz v. Saner-Whiteman Lumber Co., supra. Notwithstanding the above rule manufactured value will not be applied in regard to timber cut and appropriated where the trespass is the result of inadvertence or mistake, or where the person committing the wrong acted in good faith, and without any intention of committing a wrongful act. Of course the act must not be in reckless disregard of the rights of the owner, but the act must be wilful and the wrong intentional, or committed under such circumstances that the law will impute malice. The E. Bolles Woodenware Co. v. United States, supra; Young v. Pine Ridge Lumber Co., supra; Louis Werner Stave Co. v. Pickering, supra; Texas & N. O. R. Co. v. Jones' Ex'rs., supra; Baker v. Wheeler & Martin, supra; DeWitz v. Saner-Whiteman Lumber Co., supra.

When we come to examine this record we are compelled to the conclusion that in cutting and appropriating this timber Temple Lumber Company acted in good faith, and without malice, actual or implied. In this connection there is certainly not a line of evidence in this record to show actual malice on the part of Temple Lumber Company, and the facts are not such that malice can be implied. We think that the undisputed record shows that at the time Temple Lumber Company purchased this land and at the time it cut the timber on this 427 acres it believed in good faith that it owned in severalty such 427 acre tract and all the timber growing thereon. This belief was not the conclusion of a reckless or imprudent person and was not without substantial foundation. Tem-

ple Lumber Company knew about the parol partition between Morris and Weatherred. In fact it had notice thereof in its own chain of title. Also we think the record will justify the conclusion that Temple Lumber Company knew that Morris and Toole, Kirby Lumber Company's predecessors in title, had cut the timber from the 213 acres. If Kirby Lumber Company and its predecessors in title had had notice, either of the oral partition or the cutting of timber by Morris and Toole, it could not have recovered at all herein. It is true that we will presume in favor of the trial court's judgment that Kirby Lumber Company was not charged with notice of either the partition or the prior cutting by its predecessors in title, yet the record in regard to these matters is not so one-sided that a finding the other way would have been without substantial support in the record.

We think the rule we have announced with reference to the measure of damages for trover for timber taken from the land of another is supported by the great weight of authority both of this country and in England. The authorities we have cited are fairly representative of the holdings in general.

In E. Bolles Woodenware Co. v. United States, supra, the Supreme Court of the United States had before it for decision the measure of damages which should be applied in timber cases. Mr. Justice Miller, speaking for the Court, thus announced the rule:

"The doctrine of the English courts on this subject is probably as well stated by Lord Hatherly in the House of Lords, in the case of Livingston v. Rawyards Coal Co., L. R., 5 App. Cas., 33, as anywhere else. He said: 'There is no doubt that if a man furtively, and in bad faith, robs his neighbor of his property, and because it is underground is probably for some little time not detected, the court of equity in this country will struggle, or, I would rather say, will assert its authority to punish the fraud by fixing the person, with the value of the whole of the property which he has so furtively taken, and making him no allowance in respect of what he has so done, as would have been justly made to him if the parties had been working by agreement.' But 'when once we arrive at the fact that an inadvertence has been the cause of the misfortune, then the simple course is to make every just allowance for outlay on the part of the person who has so acquired the property and to give back to the owner, so far as is possible under the circumstances of the case, the full value of that which cannot be restored to him in specie.'

"There seems to us to be no doubt that in the case of a willful trespass, the rule as stated above is the law of damages, both in England and in this country, though in some of the state courts the milder rule has been applied even to this class of cases. Such are some that are cited from Wisconsin. Single v. Schneider, 24 Wis., 299; Weymouth v. R. R. Co., 17 Wis., 550.

"On the other hand, the weight of authority, in this country as well as in England, favors the doctrine that, where the trespass is the result of inadvertence or mistake, and the wrong was not intentional, the value of the property when first taken must govern, or if the conversion sued for was after value had been added to it, by the work of the defendant, he should be credited with this addition."

In Young v. Pine Ridge Lumber Company, supra, the Court of Civil Appeals for the 5th district had before it a suit brought by W. L. Sloan to recover damages for timber alleged to have been unlawfully and fraudulently taken from his land by the lumber company. Sloan died and Young became executor of his estate. Young sought recovery of the value of the timber taken converted into lumber and cross-ties. The opinion, which is by Judge Talbot, cites and approves the holding in the E. Bolles Woodenware Co. case, supra, and holds: We quote from the syllabus:

"In an action for fraudulently cutting timber and converting it into lumber and cross-ties, an instruction that if defendant cut and appropriated the timber by accident or mistake arising from the belief in good faith that it was the owner, and exercised diligence and care as a prudent person would exercise under the same circumstances to ascertain the true ownership, and acting under such information wrongfully cut the timber, plaintiff could recover for the value of the timber before cutting, is correct. * * *."

In Louis Werner Stave Co. v. Pickering, supra, the Court of Civil Appeals for the 1st district had before it the question of when the rule of manufactured value should be applied for timber cut and appropriated by one not the owner. The Court, speaking through Judge Pleasants, thus announced the rule:

"* * * We think these assignments should be sustained. It is a well-settled rule of decision in other jurisdictions that when the appropriation of property is made in good faith under a mistake of facts, and the taker has by labor expended upon said property converted it into a thing entirely different from the original and of greatly increased value, the title to the prop-

erty will pass to the person by whose labor the change has been wrought, and the original owner can only recover the value of the article at the time it was taken. Wetherbee v. Green, 22 Mich., 311, 7 Am. Rep., 653; Baker v. Meisch, 29 Neb., 227, 45 N. W., 685; Carpenter v. Lingenfelter, 42 Neb., 728, 60 N. W., 1022, 32 L. R. A., 422. This doctrine has been recognized and applied by the courts of this state in several cases in which the owner of timber taken by mistake was denied the right to recover the value of the timber in its manufactured state. Railway Co. v. Jones, 34 Texas Civ. App., 94, 77 S. W., 955; Young v. Lumber Co. (Texas Civ. App.), 100 S. W., 784.

"The general rule is that the owner of property has the right to all that becomes united or attached to it by accession; but when such accession is produced by the labor of another, and the identity of the property is thereby changed and its value greatly increased, the right to the property in its changed condition depends upon whether the person converting it acts in good faith believing that the property was his at the time of the conversion. If taken under these circumstances, the title to the property in its changed condition passes by accession to the person by whose labor its value has been so increased, and the original owner can only recover the value of the property in its condition at the time of the taking. On the other hand, a willful trespasser can acquire no right in property, it matters not how much he may increase its value, for the law will not permit one to take advantage of his own wrong. * * *."

In Texas & N. O. R. Co. v. Jones' Ex'rs., supra, the Court of Civil Appeals for the 5th district, speaking through Judge Rainey, thus announced the rule:

"The learned trial judge in his findings of law followed what he conceived to be the holding in Ry. Co. v. Starr (Texas Civ. App.), 55 S. W., 393, and Brown v. Pope, 65 S. W., 42, 3 Texas Ct. Rep., 279, and held that the measure was the value of the ties in 'their manufactured condition.' In this we think there was error. The facts in those cases show that the trespass was willful, and no necessity existed for making a distinction between the facts in those cases and a case like the present, where it is shown that the trespass was committed under a mistaken belief of right. In the Starr Case, supra, the holding was based in a great measure on the case of Bolles' Woodenware Co. v. U. S., 106 U. S., 432, 1 Sup. Ct., 398, 27 L. Ed., 230, which supports the holding. In the latter case, the facts

show the trespass to have been willful, and the plaintiff was authorized to recover for the increased value, though the timber had passed into the hands of an innocent party. But it was further held therein that where the trespass was made under an honest mistake a different rule prevails. The Court says: 'The weight of authority, in this country as well as in England, favors the doctrine that, where the trespass is the result of inadvertence or mistake, and the wrong was not intentional, the value of the property when first taken must govern, or, if the conversion sued for was after value had been added to it by the work of the defendant, he should be credited with this addition.' This is a fair and just rule, and should control in this case. This holding does not conflict with the holding in the Starr Case nor the Brown v. Pope case. The authorities of the various states are in hopeless conflict, and we will not attempt to reconcile them."

We quote the following from the notes in 24 Am. Dec., under Baker v. Wheeler, supra.

"Where property is taken or converted by mistake, or under a bona fide belief of right, the doctrine of the better considered cases is that the defendant is liable in trover only for its value before he has bestowed any labor or expense upon it, or that he is to be allowed a deduction for such labor and expense, if the enhanced value is made the measure of damages, the latter rule being preferred.

"This rule has been frequently applied, to a greater or less extent, in cases where coal or ore has been taken by mistake, or under a claim or right from another's mine. A leading English case on this point is a nisi prius decision by Parke, B., in Wood v. Morewood, 3 Q. B. (Ad. & El. N. S.), 440, in notis. That case, it appears, was an action for an injury to the plaintiff's reversion in certain closes by making holes and excavations, and getting coals, with a count in trover for coals. The defendant had taken the coals bona fide, supposing the land was his own under a purchase from Sir John Zouch. Parke, B., told the jury that 'if they found for the plaintiff, they were to determine what damages should be given; that if there was fraud or negligence on the part of the defendant, they might give as damages under the count in trover, the value of the coals at the time they first became chattels, on the principle laid down in Martin v. Porter; but if they thought that the defendant was not guilty of fraud or negligence, but acted fairly and honestly in the full belief that he had a right to do

what he did, they might give the fair value of the coals as if the coal fields had been purchased from the plaintiff."

The judgments of the Court of Civil Appeals and district court are both reversed and set aside and judgment is here rendered as follows:

The value of 1,479,783 feet of excess timber cut by Temple Lumber Company shall be computed at stumpage value, $5.00 per thousand feet. To the sum thus produced shall be added interest at six per cent per annum from April 1, 1925, to date of this judgment. From the total sum thus produced shall be deducted the sum of $510.43, plus interest thereon at six per cent per annum from September 1, 1923, to date of this judgment. Kirby Lumber Company shall have judgment against Temple Lumber Company for the net result of the above calculations with interest thereon from date of this judgment until paid at the rate of six per cent per annum.

It is further ordered that Temple Lumber Company shall pay all costs in this court and in the district court and Kirby Lumber Company shall pay all costs in the Court of Civil Appeals.

Opinion delivered May 22, 1935.