**Huey P. HARRIS, individually and d/b/a Huey P. Harris Land & Timber Company, Appellant,**

v.

**Jacqueline Rae NELSON, Appellee.**

**No. 09–00–055 CV.**

Court of Appeals of Texas, Beaumont.

Submitted on Aug. 17, 2000.

Decided Sept. 21, 2000.

Rehearing Overruled Oct. 12, 2000.

---

Lynwood Sanders, Orange, for appellant.

Kevin M. Fuller, Henry & Fuller, Beaumont, for appellee.

Before WALKER, C.J., BURGESS and FARRIS,* JJ.

## OPINION

DON BURGESS, Justice.

Huey P. Harris, individually and doing business as Huey P. Harris Land & Timber Company, ("Harris") appeals the judgment entered in this timber cutting case in favor of Jacqueline Rae Nelson. After a bench trial, the trial court awarded Nelson enhanced damages under section 151.101 of the Texas Natural Resources Code and exemplary damages as well. Harris brings six issues on appeal. We will affirm in part and reverse in part.

Nelson agreed to sell Johnnie Tauber approximately fifty-three acres of land, with the Texas Veterans Land Board providing the financing. The proposed transaction was never completed as the Land Board cancelled its March 20,1998 contract when Tauber's earnest money check was returned for insufficient funds. Tauber contracted with Harris to cut and remove timber from the Nelson property. Gary Marshall and his crew actually cut the timber from the Nelson land. Marshall was working for Harris and relied on him to get permission to cut the timber. Marshall sold the timber to a mill for approximately $16,000.

In issue one, Harris contends: (1) the evidence is factually insufficient to support the trial court's finding that Nelson did not consent to removal of the timber and (2) the finding is against the great weight and preponderance of the evidence. The trial court determined that Harris caused the timber to be removed from Nelson's land without the permission of Nelson and that Nelson never consented to have Harris cut timber from her land.

■ We review a trial court's findings "for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer." *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). Factual sufficiency issues are designated either as "great weight and preponderance" issues—if the complaining party had the burden of proof at trial—or, if not, then as "insufficient evidence" issues. *See Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 275–76 (Tex. App.—Amarillo 1988, writ denied).

■ An "insufficient evidence" point requires us to examine all evidence that supports and contradicts the finding, *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). *See also* W. Wendell Hall, *Standards of Review in Texas*, 29 ST. MARY'S L.J. 351, 485 (1998). The test is whether the evidence supporting the finding is "so weak or the answer so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust." *Raw Hide Oil & Gas Inc.*, 766 S.W.2d at 276 (citing *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951)); *see also* W. Wendell Hall, at 485. Further, the appellate court must not retry the case or substitute its judg-

* The Honorable David Farris, sitting by assignment pursuant to TEX. GOV'T CODE ANN. § 74.003(b) (Vernon 1998).

ment or opinion for that of the trier of fact, who is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Rego Co. v. Brannon,* 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

Here, Nelson had the burden to prove her allegation that timber was removed from her land without her consent. Thus, Harris must show there is insufficient evidence to support the finding that Nelson did not consent. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983).

Nelson's testimony supports the "no consent" finding. Nelson testified she learned from her nephew that three or four of her trees had been cut. She reported to the Sheriff's Office that someone was cutting her trees without permission. Later, her nephew told her Harris was responsible for the cutting. Nelson further testified that in her first conversation with Harris, which occurred after the cutting of the three or four trees but before the tract was cut, she told him she did not want her trees cut, the land was hers and no one had the right to cut the trees but her. Nelson maintained she never gave Harris permission to cut her trees. Later, she went to the property and saw that trees were being cut. When she spoke to Harris during that visit, he told her he had $8,600 for her. She responded that she did not want her trees cut and she wanted him to "get out right then." Harris explained he had a few more loads on the ground and she gave him permission to haul out what was already cut. She testified she never gave him permission to cut a large tract of land or to cut anymore trees after he told her he had $8,600 for her.

Harris's testimony contradicts the "no consent" finding. He testified that the first time he talked to Nelson in late February or early March, 1998, "She didn't say she didn't want it cut. She just said she had not given Johnnie Tauber permission to cut her timber." But Harris explained that later Nelson called him and "specifically said she wanted it cut." Then he sent Marshall out to look at the property.

Harris, however, failed to convince the trial court that he was credible. The trial court specifically found that Harris's testimony regarding his alleged permission to cut and remove timber was not credible. Under cross examination, Harris admitted he had been convicted previously of felony timber theft, though at his deposition he had denied being indicted for any reason. Harris's counsel objected to the questions and Nelson's counsel argued the testimony was being offered to show her entitlement to punitive damages and to show his motive and intent. Harris does not complain on appeal of this evidence.

Part of Tauber's testimony, which was presented through deposition at trial, contradicts the "no consent" finding. He testified Nelson gave him permission to cut the timber and had told him she wanted to use the proceeds for back taxes. However, the trial court also found Tauber's testimony regarding Nelson's consent was not credible since Tauber had given three different explanations regarding Nelson's calling law enforcement authorities when she learned her timber had been cut. He first explained Nelson said she thought "clear-cutting" was occurring on her property. Next Tauber testified Nelson called the sheriff's department because she did not know what was happening at her property; she later called Tauber and told him he "needed to get a contract." Finally, he testified, that Nelson did not know he had contacted anyone to cut the timber.

Forest Service Officer Rodney Monk's testimony, which is offered through his deposition, is confusing. He testified he called Nelson when Marshall was on the property and Nelson told Monk that it was okay for loggers to there. Over Harris's counsel's objection, Monk then referred to a report that had been faxed to him. The report stated Nelson had not given permis-

sion for the cutting. On appeal, Harris does not object to this evidence.

Nelson's testimony supports the court's finding that she did not consent. This supporting evidence is not so weak or the finding so contrary to the "overwhelming weight of the evidence as to be clearly wrong and manifestly unjust." *Raw Hide Oil,* 766 S.W.2d at 276. Further, we must not retry the case or substitute our judgment or opinion for that of the trier of fact. *See Smith,* 822 S.W.2d at 81; *Brannon,* 682 S.W.2d at 680. Harris's first issue is overruled.

■ In issue two, Harris maintains the trial court erred in using market value at the mill instead of market value (stumpage value) of the standing timber as the measure of damage to be enhanced under section 151.101 of the Natural Resources Code. The trial court found: (a) the reasonable market value of the timber cut from Nelson's land without her permission was $16,259.64, the market value of the timber at the mill and (b) Nelson was entitled to recover damages in the amount of three times the market value. However, Harris argues the timber's stumpage value of $4,025.86 was the amount that should have been trebled.

Section 151.101 of the Natural Resources Code, which is entitled "Damages for Unauthorized Harvesting," provides:

(a) A person who harvests standing timber with knowledge that the harvesting is without the permission of the owner of the standing timber and a person who causes another person to harvest standing timber without the permission of the owner of the standing timber are jointly and severally liable to the owner for damages in an amount equal to three times the market price of the timber harvested without permission.

. . . .

(c) This section does not apply to the trimming or clearing of trees in the vicinity of a utility line or right-of-way. TEX. NAT. RES.CODE ANN. § 151.101 (Vernon Supp.2000).

■ Harris's issue requires us to determine the measure of damages allowed under section 151.101, but neither party cites cases construing this provision that was enacted in 1997 [1], nor have we found any. Further, there is no statutory definition of the term Harris questions, i.e., "market price of the timber harvested without permission." However, section 311.011(a) of the Code Construction Act [2] provides that words and phrases should be read in context and construed according to the rules of grammar and common usage. Regardless of whether or not the statute is ambiguous on its face, section 311.023 of the Code Construction Act allows us to consider, among other matters, the: (1) object sought to be attained; (2) circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provisions; and (5) consequences of a particular construction. But, our primary objective in construing a statute must be to give effect to the legislature's intent. *See Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 438 (Tex. 1997).

The House Committee on Criminal Jurisprudence prepared a bill analysis concerning the background and purpose of Natural Resources Code, section 151.101. The analysis explains the objectives, circumstances of enactment, and, in part, the legislative history of section 151.101. *See Harvesting of and Payment for Timber; Providing for Damages; Creating an Offense, 1997: House Comm. Report Bill Analysis on H.B. 1128 from House Comm. on Crim. Jurisprudence,* 75th Leg., R.S., 1995 (1997). The analysis informs us that theft was a primary concern of the legislature. As background, the analysis noted

1. Act of May 19, 1997, 75 th Leg., R.S., ch. 562, § 1, 1997 Tex. Gen. Laws 1995.

2. TEX. GOV'T CODE ANN. § 311.001–.032 (Vernon 1998).

that (a) timber is the number one agricultural commodity in the eastern part of Texas; (b) high timber prices make the forests in East Texas a "prime target for timber thieves;" and (c) the Texas Forest Service estimates "timberland owners have lost millions of dollars worth of trees to thieves." *Id.* The stated purpose of the bill's pertinent section was to "address the unauthorized harvesting of timber" and provide "punishment for violations." *Id.*

Prior case law also aids us in construing the proper measure of damages under this statute. In *Louisiana Pac. Corp. v. Smith,* the Tyler court noted that damages normally are awarded on either market value (also called "stumpage" value) or manufactured value (sometimes called "processed" value), but explained further that "[d]epending on the *culpability or degree of negligence* of one who harvests timber pursuant to a trespass onto the timberland owned by another, one of the values will be awarded the wronged timberland owner." *Louisiana Pac. Corp. v. Smith,* 553 S.W.2d 771, 774 (Tex.Civ. App.—Tyler 1977, no writ)(emphasis added).

In *Kirby Lumber Co. v. Temple Lumber Co.,* a leading case in timber valuation, the Texas Supreme Court explained that "manufactured value" is " based upon the rule of law that a party whose property has been tortiously taken is entitled to it or its enhanced value until it has been so changed as to alter the title." *Kirby Lumber Co. v. Temple Lumber Co.,* 125 Tex. 284, 83 S.W.2d 638, 646 (Tex.1935). But, "manufactured value" is not used where the trespass is the result of inadvertence, the wrong occurred in good faith, and there was no intent to commit a wrongful act. *Id.* However, "the act must not be in reckless disregard of the rights of the owner, but the act must be willful and the wrong intentional, or committed under such circumstances that the law will impute malice." *Id.*

In *Withers v. Tyler County Lumber Co.,* this court has considered timber valuation also:

The right of recovery against a person who cuts and removes another's timber is grounded in the law of trover and conversion. Where the cutting is mistakenly done by a person who upon reasonable grounds believes he has the right to do so, the conversion is completed when the trees are cut and he is liable only for stumpage value. But where a person acting in bad faith cuts another's timber, and increases its value by labor and money spent on it, there is a continuing act of conversion, or different stages thereof, and the owner may elect at what point he will hold the wrongdoer and in such case there is no offset for such labor or increase in value. However, the wrongdoer may be held for the highest value only while the article is still in his possession or control, and not for a still higher value that an innocent third person who purchases from the wrongdoer may bring about.

*Withers v. Tyler County Lumber Co.,* 326 S.W.2d 173, 180 (Tex.Civ.App.—Beaumont, 1959, writ ref'd n.r.e.) (citations omitted).

Throughout these prior decisions runs the distinction between the mistaken party who reasonably believes the landowner has consented to the cutting and the one who either is acting in bad faith or in reckless disregard or conscious indifference to the rights of the landowner. Here, there is credible evidence that after Harris cut only three or four trees, Nelson instructed him not to have any more cut. He did anyway.

In view of the legislature's intent to prevent timber theft, and the prior case law analyzing the measure of damages to be used, we find the trial did not err in using "market value at the mill" instead of stumpage value. Harris's second issue is overruled.

■ We now consider issue six. There Harris contends the trial court erred in

finding the $4,025.86 received for the timber was retained and tortuously used with the intent to deprive the rightful owner of that sum. The court's findings, as set out in findings of fact 10, 12, 17, 18 and 19, are derived from the Natural Resources Code Section 151.151 et seq, which requires a contractual relationship between the "timber purchaser" and the seller that is contrary to other findings by the trial court that such a relationship did not exist.

Under the findings of fact of which Harris complains, the court first found the $4,025.86 check, which Harris received from the logger hired to cut and remove Nelson's timber, constituted trust funds under chapter 151 of the Texas Natural Resources Code. The court also determined Harris's bank records showed he used the funds for his own benefit and with the intent to deprive the owner of them in violation of chapter 151. The court further found that Harris tortuously used, retained, and/or disbursed the trust funds and that his actions in doing so constituted both statutory fraud under chapter 151 as well as a breach of the fiduciary duties owed by Harris to Nelson. In addition, the court found Harris's actions in causing the wrongful removal of Nelson's timber to be separate and distinct from his actions in wrongfully using, retaining, or disbursing the trust funds.

Under subchapter C of section 151 of the Natural Resources Code, "timber purchaser" means a person who purchases standing timber for harvest, while the money a timber purchaser collects for harvested timber is trust money. Tex. Nat. Res.Code Ann. §§ 151.151–152 (Vernon Supp.2000). Under the statute, trustees of trust money are any timber purchaser and each officer, director, partner, or agent of a timber purchaser are trustees of trust money. Moreover, each seller of standing timber is a beneficiary of trust money to the extent of the beneficiary's share of the purchase price for the timber. Tex. Nat. Res.Code Ann. §§ 151.153–154 (Vernon

Supp.2000). Offenses occur under the statute when:

(a) A trustee commits an offense if the trustee, knowingly or with intent to defraud, directly or indirectly retains, uses, disperses, or otherwise diverts more than $500 of trust money without first fully paying all of the beneficiaries the purchase price for the timber.

(b) A trustee acts with intent to defraud if the trustee retains, uses, disperses, or diverts trust money with the intent to deprive a beneficiary of trust money.

(c) A trustee is presumed to have acted with intent to defraud if the trustee does not pay all of the beneficiaries the purchase price for the timber not later than the 45th day after the date the trustee collects money for the timber.

(d) An offense under this section is a state jail felony.

Tex. Nat. Res.Code Ann. § 151.155 (Vernon Supp.2000).

Again, neither party cites cases construing this subchapter D of the 1997 statute,[3] and, again, we have found none. Harris argues the trust provisions of the Natural Resources Code apply only in situations where there is a purchaser-seller relationship for the sale of standing timber. We agree.

The plain language of the statute defines a trustee only as a purchaser, or its officers, directors, partners, or agents. Tex. Nat. Res.Code Ann. § 151.153. Here, Harris was not a purchaser. As the trial court found, Nelson, by her own testimony, did not consent to the cutting of the timber, which would have been necessary for Harris to become a purchaser. Inasmuch as Harris was not a purchaser, he also was not a trustee and thus did not violate section 151.155 of the Natural Resources Code. We affirm issue six.

◼ In the remainder of Harris's issues, he complains of the $150,000 exemplary damages award. Relying on sections 41.003 and 41.004 of the Texas Civil Prac-

---

**3.** Act of May 19, 1997, 75th Leg., R.S., ch. 562, § 1, 1997 Tex. Gen. Laws 1995.

tices and Remedies Code, Harris contends in issue three that the trial court erred in granting exemplary damages as such damages are precluded when no damages are awarded for fraud or malice, and also when actual damages are awarded, if they are enhanced by another statute. In issue four, Harris asserts the trial court erred in granting $150,000 in exemplary damages as the standards for recovery of exemplary damages, fraud or malice were not shown by clear and convincing evidence that would be factually sufficient to support such finding. In issue five, Harris maintains the trial court erred in granting $150,000 in exemplary damages as that sum is excessive and not appropriate when compared with $4,025.86 in actual damages and further is not supported by consideration of the elements of section 41.011 of the Texas Civil Practices and Remedies Code.

In regard to punitive damages, the trial court found they were warranted for Harris's breach of fiduciary duty and statutory fraud—acts that were committed willfully by Harris—and further found the sum of $150,000 to be reasonable and necessary to meet the ends of justice and deter Harris from such future conduct. The court's punitive damages award, thus, depends upon its findings that Harris violated the trust provisions in sections 151.151, of the Natural Resources Code. In issue six, we found no such violations occurred; therefore, we reverse the trial court's punitive damages award.

Accordingly, the trial court's judgment is affirmed as to the award of $48,778.92, as well as the prejudgment interest associated therewith in the sum of $702.14 and post-judgment interest on that award at the rate of ten (10%) percent, but is reversed as to the award of punitive damages in the sum of $150,000.

AFFIRMED IN PART; REVERSED AND RENDERED IN PART.